**SOLVENT CHEMICAL COMPANY, ICC INDUSTRIES, INC., Plaintiffs,**

v.

**E.I. DUPONT DE NEMOURS & COMPANY, Defendant.**

No. 01–CV–425C(SC).

United States District Court, W.D. New York.

Dec. 24, 2002.

---

Jaeckle, Fleischmann & Mugel, LLP (Dennis P. Harkawik, Esq., and Brenda J. Joyce, Esq., of Counsel), Buffalo, NY, for Solvent Chemical Company, Inc.

Buchanan Ingersoll Professional Corporation (Daniel M. Darragh, Esq., and Martha M. Harris, Esq., of Counsel), Pittsburgh, PA, for E.I. DuPont de Nemours & Company.

## INTRODUCTION

CURTIN, District Judge.

Plaintiffs Solvent Chemical Company, Inc. ("Solvent") and Solvent's parent company, ICC Industries, Inc. ("ICC"), (collectively "Solvent" or "plaintiffs") commenced this action on June 14, 2001, asserting two claims against defendant E.I. DuPont de Nemours & Company ("DuPont"). The claims are for contribution pursuant to Section 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613, and for common law contribution, with respect to the costs plaintiffs have incurred and will incur in remediating contamination at the Solvent property located at 3163 Buffalo Avenue, Niagara Falls, New York (the "3163 Buffalo Avenue Site" or the "Solvent Site") and adjacent property owned by Olin Corporation (referred to by the parties herein as the "Olin Hot Spot"[1]). Pending before the court are four motions: (1) Solvent's motion to strike the second, third, and fourth affirmative defenses contained in DuPont's answer and dismissing DuPont's counterclaim, Item 4; (2) DuPont's cross-motion for summary judgment dismissing the complaint and for declaratory judgment, Item 9; (3) Solvent's motion for leave to file an amended complaint to add an additional claim, Item 15; and (4) Solvent's motion to consolidate this action with a CERCLA action commenced in this court in 1983 by New York State against Solvent, ICC, and numerous other defendants, docketed as Civil Action No. 83–CV–1401, seeking recovery of costs incurred and to be incurred at the 3163 Buffalo Avenue Site. Item 1028 in 83–CV–1401.

For the reasons that follow, the court (1) denies Solvent's motion to strike the second, third, and fourth affirmative defenses contained in DuPont's answer and to dismiss DuPont's counterclaim; (2) denies DuPont's cross-motion for summary judgment dismissing the complaint and granting declaratory judgment; (3) grants Solvent's motion for leave to file an amended complaint; and (4) denies Solvent's motion to consolidate.

## BACKGROUND

The 5.7 acre 3163 Buffalo Avenue Site at issue in this complaint "functioned as a chemical manufacturing and storage facility during various periods starting in 1940." Item 1, Ex. B, p. 1. During World War II, from 1940–1945, DuPont built and operated the plant at the site under a contract with the United States government to manufacture "impregnite." From 1951–1953, the site was reactivated for impregnite production by Hooker Electrochemical Company. In 1972, the City of Niagara Falls purchased the site and sold it to Solvent. From 1973–1977, Solvent manufactured chlorinated benzenes and other chemicals at the site. Solvent sold the site to Transit Holding Company (predecessor of Mader Capital Corp.) in 1978. A number of owners have operated the site until the present day.

The Solvent Site is adjacent to several other industrial facilities, and is bordered on the west by the Olin Corporation, and to the south and east by DuPont's manufacturing facility located at Buffalo Avenue and 26th Street in Niagara Falls ("the DuPont Facility"). Item 1, Ex. B, p. 1. In 1985, the State determined that the 3163 Buffalo Avenue Site was an inactive hazardous waste disposal site, and placed it on

---

**1.** As alleged in the complaint, the Olin Hot Spot comprises "an area of contamination located on property owned by Olin Corpora- tion adjacent to the 3163 Buffalo Avenue Site ...," near Buffalo Avenue between the Site and Gill Creek. Item 1, ¶ 7; *id.*, Ex. A, ¶ 7.

the Inactive Waste Disposal Site Registry as Site Number 932096. *Id.*, Ex A, p. 3. At about the same time, the State also determined that the DuPont Facility was an inactive hazardous waste disposal site, and separately listed it on the Inactive Waste Disposal Site Registry as Site Number 932013. Item 9, App. A, ¶ 3.

Meanwhile, in December 1983, the State commenced Civil Action No. 83–CV–1401 against Solvent and others (including Du-Pont and Olin), pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), and the common law of public nuisance. The State sought recovery of response costs incurred in connection with the 3163 Buffalo Avenue Site, and an injunction compelling investigation and remediation of the contaminated property.

In June 1986, Solvent commenced a third-party action in No. 83–CV–1401 against DuPont, Occidental Chemical Corp., the United States, and the City of Niagara Falls, claiming that the chemical manufacturing operations conducted by the third-party defendants on the 3163 Buffalo Avenue Site had contributed to the Site's environmental condition.[2] In 1989, plaintiffs, the United States, DuPont, Mader Capital Corp., and Occidental, as potentially responsible parties, conducted a remedial investigation to define the nature and extent of contamination resulting from previous activities at the Site. An investigation report was submitted to the State in 1990, indicating "significant groundwater and soils contamination. Principal contaminants discovered in the remedial investigation included chlorobenzene, dichlorobenzene, trichlorobenzene, and metals such as lead, mercury, etc." Item 1, Ex. B, p. 3. The New York State Department of Environmental Conservation ("DEC") conducted a Supplemental Remedial Investigation and Feasibility Study ("RI/FS") to evaluate various remedial alternatives. The DEC issued a Record of Decision ("ROD") on December 31, 1996. The ROD presented a plan for the remedial action to be taken at the site, in accordance with the New York State Environmental Conservation Law, which was "not inconsistent" with the National Contingency Plan. Item 1, Ex. B, p. i.

### The Consent Orders/Decrees

#### 1. DuPont

In 1989, DuPont and the DEC entered into an Order on Consent for the purpose of eliminating or mitigating the release and migration of contaminants at and from the DuPont Facility. Item 9, App. A, ¶ 5. Pursuant to the Order on Consent, DuPont installed a groundwater pump and treatment system which it still operates. Item 3, ¶ 37. This remedial system was implemented to address threats to public health or the environment related to release of hazardous substances at the DuPont plant, including migration of such substances in the groundwater. *Id.*, ¶ 38. Among the substances released at or from the DuPont Facility were chlorinated aliphatic compounds, such as trichloroethylene ("TCE") and perchloroethylene ("PCE"). Item 9, p. 3 n. 3.

In April 1997, the State entered into a Consent Decree with DuPont, Occidental, and the United States with respect to the 3163 Buffalo Avenue Site (the "DuPont Consent Decree," Item 657 in No. 83–CV–1401). The terms of the DuPont Consent Decree provided that DuPont would pay the State $216,250.00 and the State would settle all of its claims against DuPont for the "Matters Addressed" in the Consent Decree,

> including all Response Costs, past and future, which have been incurred or will

---

**2.** Solvent later impleaded additional third-party defendants in a series of amended third-party complaints (*see* Items 179, 390, 539, 746, 861 and 1148).

be incurred by the State, any local governmental entity, or any private entity, including any and all Response Costs incurred by any party to this action or by any other responsible party, for investigation and remediation as a result of the release or threatened release of Hazardous Substances at or from the Site.

Item 1, Ex. D, ¶ 17.

Paragraph 19(b) of the Consent Decree provided that,

> Only with respect to DuPont, the "Matters Addressed" *do not* include, and DuPont reserves all of its rights and defenses against any party other than a Settling Defendant or the State with regard to:
>
> . . . . .
>
> (b) any claim by a person not a party to this Consent Decree for any Response Costs or other relief for the release of Hazardous Substances emanating or arising from the adjacent or nearby DuPont Facility and migrating onto or about the Site and/or Olin property . . .

*Id.,* ¶ 19(b).

The Consent Decree also contained the following provision for "Contribution Protection:"

> The Parties agree and by entering into this Consent Decree the Court finds that the Settling Defendants [DuPont, Occidental, and the United States] are entitled to the full extent of protection from contribution actions or claims provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), and/or any other applicable federal or state law, for the

Matters Addressed by this Consent Decree.

*Id.,* ¶ 21.

The DuPont Consent Decree was approved by this court on October 8, 1997, and entered as an order in No. 83–CV–1401. *Id.,* p. 22; Item 1, ¶ 13.

### 2. Solvent and ICC

Also in April 1997, plaintiffs Solvent and ICC entered into separate Consent Decrees with the State of New York.[3] Item 1, Exs. A and C (Items 655 and 652 in No. 83–CV–1401), respectively. Pursuant to its Consent Decree, Solvent agreed to remediate the contamination discovered at the 3163 Buffalo Avenue Site, as well as the contamination located on adjacent property owned by Olin (the "Hot Spot"), as set forth in the ROD. *See* Item 1, Ex. A, ¶¶ 5, 7. In its Consent Decree, ICC, as Solvent's parent company, agreed to guarantee Solvent's performance under the Solvent Consent Decree. Item 1, Ex. C. Both the Solvent and ICC Consent Decrees reserved each corporation's rights to seek recovery of any response costs incurred for the release of hazardous substances or other contamination emanating or arising from adjacent facilities, including the DuPont Facility, and migrating onto the 3163 Buffalo Avenue Site and/or the Olin property. Item 1, Ex. A, ¶ 46(b); Ex. C, ¶ 46(b). Paragraphs 46(b) in both the ICC and Solvent Consent Decrees provided:

> The "Matters Addressed" *do not* include, and Settling Defendant reserves all of its rights against any party other than the State with regard to:
>
> . . . . .
>
> (b) any response costs or other relief for the release of hazardous substances

---

**3.** At about the same time, New York entered into consent decrees with other defendants and third-party defendants that Solvent had impleaded in 1986. *See* Items 653, 654, and 656 in No. 83–CV–1041.

or other contamination emanating or arising from adjacent or nearby facilities, *including the DuPont facility,* and migrating onto or about the Site and/or Olin property . . . .

Item 1, Ex. A, ¶ 46(b) (emphasis added).

The Solvent and ICC Consent Decrees were approved by this court on October 8, 1997, and entered as orders in No. 83–CV–1401. Item 1, ¶ 13.

### PROCEDURAL HISTORY

**1. Plaintiffs' Motion to Strike Affirmative Defenses; Defendant's Motion to Dismiss Complaint**

Solvent's first claim for relief in the complaint in this action is for contribution under CERCLA. Solvent asserts that the 3163 Buffalo Avenue Site, the DuPont Facility, and the Olin "Hot Spot" are all "facilities" within the meaning of CERCLA Section 101(9), 42 U.S.C. § 9601(9), and that DuPont is a "person" within the meaning of CERCLA Section 101(21), 42 U.S.C. § 9601(21). Item 1, ¶¶ 14–17. In paragraph 18 of the complaint, Solvent alleges that "[u]pon information and belief, DuPont has released 'hazardous substances' as defined in CERCLA § 101(14), 42 U.S.C. § 9601(14), at the DuPont Facility that have come to be located at the 3163 Buffalo Avenue Site and the Hot Spot." *Id.,* ¶ 18. In the next paragraph, Solvent alleges that "Solvent and ICC have incurred, and will continue to incur, necessary costs in responding to the release of hazardous substances at the 3163 Buffalo Avenue Site and the Hot Spot." *Id.* ¶ 19. Solvent also alleges that these costs have been incurred in a manner consistent with the National Contingency Plan, *id.,* ¶ 20, and that Solvent and ICC are entitled to contribution from DuPont "for some or all of the response costs incurred at the 3163 Buffalo Avenue Site and the Hot Spot." *Id.,* ¶ 21. Solvent and ICC seek a declaration pursuant to CERCLA Section

113(g)(2), 42 U.S.C. § 9613(g)(2), that DuPont "is liable for an equitable share of all future costs to be incurred" by plaintiffs in remediating the 3163 Buffalo Avenue Site and the Olin Hot Spot. *Id.,* ¶ 22.

In their second claim for relief, for contribution under the common law, Solvent and ICC allege that they have been compelled to incur response costs and other damages in excess of their equitable share, and are thus entitled to contribution from DuPont for all or part of those response costs and damages. *Id.,* ¶¶ 24, 25.

In its answer, DuPont asserts four affirmative defenses. The first affirmative defense is that Solvent has failed to state a claim upon which relief can be granted. Item 3, ¶ 26. The second affirmative defense is based on the "Contribution Protection" provision and other language contained in the DuPont Consent Decree, which DuPont argues bars Solvent and ICC from asserting any claim against DuPont with respect to response costs incurred or to be incurred at the 3163 Buffalo Avenue Site or at the Olin Hot Spot. Item 3, ¶¶ 27–31. As its third affirmative defense, DuPont alleges that to the extent there have been releases at the DuPont plant of organic compounds unrelated to the benzene and chlorinated benzene compounds associated with the remediation at the 3163 Buffalo Avenue Site, which may have migrated to the Solvent Site or the Hot Spot, such release and/or migration did not cause Solvent and ICC to incur response costs. *Id.,* ¶ 34. As its fourth affirmative defense, DuPont alleges that since conditions at the DuPont Facility are being addressed by the State in a separate enforcement matter memorialized in the 1989 Order on Consent, the alleged release of contaminants from its facility "cannot be considered to have necessitated any of the remedial actions required by the State's

ROD for the Solvent Facility." Item 9, p. 21; Item 3, ¶¶ 36–38.

In its answer, DuPont also asserts a counterclaim for declaratory judgment seeking a declaration of the respective rights of DuPont, Solvent, and ICC pursuant to ¶¶ 17, 19(b), and 21 of the DuPont Consent Decree. Specifically, DuPont alleges that ¶¶ 17 and 21 preclude plaintiffs from seeking contribution or other relief regarding release of hazardous substances at the Solvent Site and the Olin Hot Spot. Item 3, Counterclaim ¶ 11(a). Furthermore, DuPont contends that paragraph 19(b) permits plaintiffs to seek contribution from DuPont only with regard to the incremental or additional costs incurred in performing remedial actions required by the ROD to the extent that such costs "are attributable to hazardous substances emanating or arising from the DuPont plant and migrating onto the Solvent site or the Olin hot spot." *Id.*, ¶ 11(b).

Solvent filed a motion to strike DuPont's second, third, and fourth affirmative defenses and to dismiss the counterclaim. Item 4. In response, DuPont filed a memorandum of law [4] both in support of a cross-motion for summary judgment dismissing Solvent's complaint and granting declaratory judgment in favor of DuPont on its counterclaim, and opposing Solvent's motion to strike and to dismiss the counterclaim. Item 9. Further briefing by Solvent, Items 18 and 30, and DuPont, Item 24, followed, as well as various letter submissions to the court. Items 33–37.

### 2. Motion to Consolidate

Solvent also filed a motion to consolidate this action with Civil Action No. 83–CV–1401. Item 1028 in No. 83–CV–1401. DuPont filed a memorandum in opposition to the motion to consolidate. Item 8. Further briefing by Solvent, Item 11, and DuPont, Item 14, followed.

### 3. Motion to Amend

Lastly, Solvent filed a motion for leave to amend the complaint to add a third cause of action for "imminent and substantial endangerment" under § 7002(a)(1)(B) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B). Items 15, 16. DuPont opposes the motion, Item 26, and Solvent has filed a reply memorandum. Item 29.

The court will first address DuPont's cross-motion for summary judgment dismissing the complaint, given the impact that resolution of this motion will have upon the other pending motions. The court will then address in turn Solvent's motion to strike DuPont's affirmative defenses and to dismiss DuPont's counterclaim for declaratory judgment; Solvent's motion to amend the complaint; and finally, Solvent's motion to consolidate this action with No. 83–CV–1401.

### *DISCUSSION*

### I. DuPont's Motion for Summary Judgment/Dismissal

DuPont has framed its response to plaintiffs' motion to strike as a cross-motion for summary judgment dismissing the complaint.[5] *See* Item 9. Specifically, Du-

---

4. DuPont has not complied with Fed.R.Civ.P. 7 in its cross-motion pleadings. It has only submitted a memorandum of law, without a notice of motion and supporting affidavit. Nevertheless, the court will treat its memorandum of law as a cross-motion for summary judgment.

5. DuPont's cross-motion also seeks summary judgment granting affirmative relief on its counterclaim for declaratory judgment. Because this request for relief touches upon issues raised by Solvent in its motion to strike, the court will consider this aspect of DuPont's cross-motion in Section II(D), *infra*.

Pont contends that Solvent has failed to sufficiently allege *prima facie* CERCLA contribution liability against DuPont. DuPont also contends that Solvent's common-law contribution claim is preempted by CERCLA, and that Solvent's request for an award of attorneys' fees should be stricken from the complaint's prayer for relief.

Federal Rule of Civil Procedure 56(c) provides that a motion for summary judgment shall be granted if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Under the rule, the burden is on the moving party to inform the court of the basis for its motion and to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). When perusing the record to determine whether a rational fact-finder would find for the nonmoving party, "a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party." *Sorlucco v. New York City Police Department,* 888 F.2d 4, 6 (2d Cir.1989).

By way of its summary judgment motion, DuPont seeks dismissal of the complaint for failure to state a CERCLA contribution claim, invoking the standards for considering a motion to dismiss pursuant to Rule 12(b)(6). A court may not dismiss a complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (complaint may be dismissed under Rule 12(b)(6) only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"). Therefore, "the issue before the court is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Solow Building Co. v. Nine West Group, Inc.,* 2001 WL 736794, at *2 (S.D.N.Y. June 29, 2001) (citing *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (internal quotation omitted)). When passing on a motion to dismiss, the court must accept the allegations in the complaint as true and construe them in favor of the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Preliminarily, a "motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." 5A Wright & Miller, *Federal Practice & Procedure: Civil 2d* § 1357, p. 321 (2d ed.1990). "Few complaints fail to meet this liberal standard and become subject to dismissal . . .," especially considering the policy of the Federal Rules to determine actions on their merits. *Id.,* pp. 323–24. Rule 12(b)(6) "imposes a substantial burden of proof upon the moving party." *Mina Investment Holdings, Ltd. v. Lefkowitz,* 16 F.Supp.2d 355, 359 (S.D.N.Y. 1998).

With these standards in mind, the court now turns to a consideration of whether Solvent has sufficiently pleaded its claims

for CERCLA contribution, common-law contribution, and attorneys' fees.

## A. CERCLA Contribution

■ In its first claim for relief, Solvent seeks contribution from DuPont, pursuant to CERCLA Section 113, for some or all of the response costs incurred in implementing the remedy for the 3163 Buffalo Avenue Site and the Olin Hot Spot. DuPont argues that Solvent's first claim must be dismissed for failure to sufficiently plead *a prima facie* claim for contribution under CERCLA.[6]

■ In order to make out a *prima facie* claim for CERCLA liability, a plaintiff suing under either Section 107(a) or Section 113(f)(1) must establish that: (1) the defendant falls within one of the four categories of potentially responsible parties set forth in Section 107(a); (2) the facility is indeed a "facility" as defined by CERCLA Section 101(9); (3) there has been a release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs in responding to the release or threatened release; and (5) the response costs incurred conform to the National Contingency Plan. *Prisco v. A & D Carting Corp.,* 168 F.3d 593, 602–03 (2d Cir.1999). In this case, Solvent has alleged in its complaint that: (1) DuPont is a "person" within the meaning of CERCLA Section 101(21), Item 1, ¶ 17; (2) the DuPont site, the Solvent site, and the Olin Hot Spot are "facilities" within the meaning of CERCLA Section 101(9), *id.,* ¶¶ 14, 15, 16; (3) DuPont has released "hazardous substances," as defined in CERCLA Section 101(14), at the DuPont Facility, that have come to be located at the 3163 Buffalo Avenue Site and the Olin Hot Spot,

*id.,* ¶ 18; (4) plaintiffs have incurred and will continue to incur necessary costs in responding to the release of hazardous substances at the Buffalo Avenue site and the Olin Hot Spot, *id.,* ¶ 19; and (5) plaintiffs' costs have been incurred in a manner consistent with the National Contingency Plan. *Id.,* ¶ 20.

DuPont contends that Solvent has failed to state a claim because Solvent failed to plead "a release or threatened release from the DuPont Facility that has *caused* it to incur response costs" at the Solvent Site. Item 9, p. 5 (emphasis added). According to DuPont, the DuPont Consent Decree entered as an order in No. 83–CV–1401 expressly excludes claims alleging DuPont's liability for costs incurred in responding to a release of hazardous substances from the DuPont Facility, which is exactly what Solvent now claims to be the source of DuPont's contribution liability. DuPont argues that, because Solvent has failed to allege a causal relationship between the response costs it has incurred and a release from the DuPont Facility, the contribution claim must be dismissed. Citing statutory language and CERCLA jurisprudence as authority, DuPont maintains that "the causal nexus between the release or threatened release of hazardous substances from a facility for which DuPont bears responsibility is an element of Solvent's *prima facie* case." Item 24, p. 8. This argument leads to a discussion of the role of causation in pleading a *prima facie* case of CERCLA liability, an issue that permeates much of DuPont's argument on all four pending motions.

The causation issue finds its genesis in the wording of the CERCLA statute. The

---

**6.** DuPont also argues that Solvent's statutory contribution claim is barred by CERCLA § 113(f)(2) and the express terms of the DuPont Consent Decree. This argument is addressed in the text *infra* at Section II(A), in connection with Solvent's motion to strike DuPont's second affirmative defense, and also at Section II(D), in connection with Solvent's motion to dismiss DuPont's counterclaim for declaratory judgment.

statute provides that a party responsible for a facility "from which there is a release, or a threatened release which *causes* the incurrence of response costs, of a hazardous substance" shall be liable for various costs. 42 U.S.C. § 9607(a)(4) (emphasis added). The Second Circuit has interpreted this provision as requiring that a plaintiff show that it "incurred costs responding to the release or threatened release." *Bedford Affiliates v. Sills,* 156 F.3d 416, 427 (2d Cir.1998); *see also Goodrich v. Betkoski,* 99 F.3d 505, 514 (2d Cir.1996). DuPont reads the statute as requiring a plaintiff to allege that "the release or threatened release has *caused* plaintiff to incur response costs." Item 9, p. 7 (emphasis added).

This may appear to be an insignificant difference, but given the differing interpretations rendered by both district courts and circuit courts when faced with "causation" issues in a CERCLA action, DuPont is able to cite to a number of cases in support of its position that in order for Solvent to plead a *prima facie* case, it must allege a "causal nexus"-*i.e.,* that hazardous substances migrating from the DuPont facility to the Solvent Site "caused" Solvent to incur response costs. Solvent counters that case law is quite clear that its complaint does not have to comport with such a heightened causation requirement. Solvent argues that, in CERCLA's strict liability scheme, how hazardous substances have come to be located at any given site is simply not a relevant consideration. *See* Item 18, p. 6.

The Second Circuit has clearly endorsed Solvent's position. In *United States v. Alcan,* 990 F.2d 711 (2d Cir.1993), Alcan argued (as DuPont argues here) that it should not be held liable unless its wastes "caused" plaintiff to incur response costs. The court provided an extensive discussion of causation under CERCLA. Interpreting the "plain language" of the statute, set forth at § 9607(a)(3) and (a)(4), the Second Circuit held that a plaintiff need only prove "(1) there was a release or threatened release, which (2) caused incurrence of response costs, and (3) that the defendant generated hazardous waste at the clean-up site. What is *not* required is that the [plaintiff] show that a specific defendant's waste caused incurrence of clean-up costs." *Id.* at 721. The court drew upon the legislative history of the statute in concluding, "Congress specifically rejected including a causation requirement in this section.... [I]t seems plain that in addition to imposing a strict liability scheme, CERCLA does away with a causation requirement." *Id.*

Many other courts have arrived at a similar conclusion. As explained by the Third Circuit:

> The statute does not, on its face, require the plaintiff to prove that the generator's *hazardous substances* themselves caused the release or caused the incurrence of response costs; rather, it requires the plaintiff to prove that the *release or threatened release* caused the incurrence of response costs, and that the defendant is a generator of hazardous substances at the facility....
>
> Further, virtually every court that has considered this [causation] question has held that a CERCLA plaintiff need not establish a direct causal connection between the defendant's hazardous substances and the release or the plaintiff's incurrence of response costs.

*United States v. Alcan Aluminum Corp.,* 964 F.2d 252, 264, 265 (3d Cir.1992) (emphasis supplied) (citing cases from the First, Second, Fourth and Fifth Circuits). In cases involving multiple sources of contamination, "a plaintiff need not prove a specific causal link between costs incurred and an individual generator's waste." *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 670, n. 8 (5th Cir.1989).

Examining the pleadings in this case in light of these holdings and the Rule 12(b)(6) standards set forth above, the court finds that Solvent has stated a claim for contribution under the CERCLA statute. While it is true that the complaint does not specifically allege that DuPont's release of hazardous substances caused it to incur response costs, given the liberal standard under which complaints are assessed on a 12(b)(6) motion, it is clear that plaintiffs have alleged that there was a release or threatened release of hazardous substances at the DuPont Facility, that those substances have come to be located on the Solvent Site and the Olin Hot Spot, and that Solvent has incurred response costs. Thus, plaintiffs have pleaded a *prima facie* case of CERCLA contribution liability against DuPont. This pleading is legally sufficient to allege CERCLA liability against DuPont for "any and all response costs, not just those costs 'caused' by its release." *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 936 (8th Cir. 1995).

The court arrives at this conclusion despite some language in *Bob's Beverage Inc. v. Acme, Inc.*, 264 F.3d 692 (6th Cir.2001), cited by DuPont, in which the Sixth Circuit approved a district court finding that "there was no evidence that any release that occurred during the ownership of the Merkel Defendants caused any increase in the response costs later incurred by the Appellants." *Id.* at 696. Solvent has ably interpreted the holding in *Bob's Beverage* in light of the cases relied upon in that decision as well as other Sixth Circuit pre-

cedent. As Solvent asserts, the *Bob's Beverage* case holds that if a party is not responsible for an actual release of hazardous substances being addressed by a CERCLA plaintiff, and if the plaintiff cannot otherwise show that the defendant's release or threatened release somehow contributed to the plaintiff's response costs, then that party cannot be held responsible. It is important to note that the finding in *Bob's Beverage* occurred at the summary judgment stage, where evidence, including expert reports, had been submitted in support of each side's position. In assessing a Rule 12(b)(6) motion to dismiss, however, such an argument is clearly premature and the cases cited by DuPont are unavailing at this stage of the proceedings.

Yet, despite the almost uniform rejection of causation as a requirement for a *prima facie* case, causation issues are still alive and well in CERCLA actions.[7] The Second Circuit in *Alcan* observed that after it had, in no uncertain terms, discarded causation in the liability phase, it had to "candidly admit that causation is being brought back into the case-through the backdoor, after being denied entry at the front door-at the apportionment stage." *Alcan*, 990 F.2d at 722. The *Alcan* court realized that having "rejected Alcan's proffered defenses to liability, one would suppose there is no limit to the scope of CERCLA liability." 990 F.2d at 721. In order to avoid such a harsh result, the court discussed various ways by which damages could be apportioned among multiple tortfeasors whether there was an indivisible harm, or distinct harms.[8] Both

---

**7.** At oral argument, counsel for Solvent acknowledged that there is a causation requirement: Solvent will have to show that there was a migration from DuPont's to Solvent's site. If they cannot show it, they have no case. DuPont, though, has not denied it released chemicals or that they have migrated. *See* Item 3, ¶ 18.

**8.** This was also the issue in *Memphis Zane May Assoc. v. IBC Mfg. Co.*, 952 F.Supp. 541 (W.D.Tenn.1996). One of the defendants sought summary judgment on the issue of joint and several liability. The court held that the plaintiff "must show a nexus between their response costs and a release from a Defendant's property as a necessary predicate

the Second and Third Circuits' *Alcan* decisions expressed concern about imposing joint and several liability in a situation where a defendant had little or no connection to the harm posed at the site. The Third Circuit's formulation for the apportionment inquiry also involved causation:

> If [defendant] can establish in [the divisibility] hearing that the harm is capable of reasonable apportionment, then it should be held liable only for the response costs relating to that portion of the harm to which it contributed. Further if [defendant] can establish that the hazardous substances in its emulsion could not, when added to other hazardous substances, have caused or contributed to the release or the resultant response costs, then it should not be liable for any of the response costs.

964 F.2d at 271.

However, the Second Circuit limited such apportionment to situations where a defendant's pollutants contributed no more than "background contamination and also could not concentrate." *Alcan*, 990 F.2d at 722. The Second Circuit left "the choice as to when to address divisibility and apportionment . . . to the sound discretion of the trial court in the handling of an individual case." *Id.* at 723.

Basically, DuPont argues that "absent a *showing* that a release from the second facility has caused plaintiff to incur response costs, no CERCLA liability may be imposed." Item 9, p. 10 (emphasis added). However, the wording of DuPont's argument belies its weakness at this stage of the proceedings. To make a "showing" denotes that a party provides facts or evidence in support of its argument. Random House Unabridged Dictionary (2d ed.1993) defines "showing" as "setting forth or presentation, as of facts or conditions." Thus, it would be premature for the court to grant DuPont's cross-motion for summary judgment to dismiss the complaint at this stage of the proceedings. Final decision must await further discovery and fact-finding.

█ The court is, however, troubled by the fact that Solvent did not plead that DuPont was a "responsible party" pursuant to CERCLA Section 107(a)(3) with respect to either the Solvent or DuPont facilities, one of the necessary elements of pleading a *prima facie* case for contribution. Still, given the liberal standard by which complaints are assessed on motions to dismiss, the court finds that plaintiffs have asserted facts by which DuPont could be characterized as a responsible party: DuPont is alleged to have "maintained a manufacturing facility," Item 1, ¶ 4, and DuPont is alleged to have released hazardous substances at the DuPont Facility. *Id.*, ¶ 18.

Solvent also cites *Scribner v. Summers*, 1995 U.S. Dist. LEXIS 20924 (W.D.N.Y. July 10, 1995), *rev'd on other grounds*, 84 F.3d 554 (2d Cir.1996), in which the defendants were found to be potentially responsible parties because they owned and operated a facility that caused hazardous substances to be released into the environment, which seeped onto and contaminated plaintiffs' property. In light of this precedent as well as the holdings in the cases discussed above, and considering the standards for Rule 12(b)(6) dismissal, the complaint can be read as pleading that DuPont is a potentially responsible party under CERCLA Section 107(a)(1).

Based on this analysis, it cannot be said to be beyond doubt that Solvent can prove no set of facts in support of its claim which

to a finding of joint and several liability." *Id.* at 546. Since plaintiff did not present evidence which would tend to show that the chemicals issued from the defendant's property, the defendant was granted summary judgment.

would entitle it to relief under CERCLA's contribution provision. Accordingly, the court declines to dismiss plaintiff's first cause of action for failure to state a claim.

### B. Common Law Contribution

■ Solvent's second claim for relief seeks common law contribution against DuPont. DuPont argues that this claim must be dismissed because CERCLA preempts state law remedies that conflict with CERCLA's statutory contribution scheme. DuPont cites *Bedford Affiliates v. Sills,* 156 F.3d 416, 427 (2d Cir.1998), for the holding that state common law causes of action for restitution and indemnification are preempted by CERCLA Section 113(f). DuPont also cites *Volunteers of America v. Heinrich,* 90 F.Supp.2d 252, 257 (W.D.N.Y.2000), for the holding that CERCLA preempts state common law claims for contribution and indemnity, and other claims seeking CERCLA-type damages.

Plaintiffs respond that *Bedford Affiliates* stands for the proposition that common law causes of action are preempted "only to the extent the costs sought under the common law theory are wholly duplicative of the costs recoverable under CERCLA." Item 18, p. 10. Plaintiffs assert that state law claims are not preempted by CERCLA "to the extent those claims seek damages which are not available under CERCLA." *Bedford Affiliates,* 156 F.3d at 426 (citing *Volunteers of America,* 90 F.Supp.2d at 258). According to plaintiffs, it is at least conceivable that they might recover costs under the common law that may not be recoverable under CERCLA. As an example, plaintiffs note that CERCLA imposes an additional requirement to cost recovery-*i.e.,* that incurred costs be consistent with the National Contingency Plan-not required under common law. Since DuPont has not admitted that plaintiffs' response costs are consistent with the National Contingency Plan, that require-

ment may prove to be a barrier to recovery under CERCLA, while the common law claim would still allow recovery.

■ Clearly, the import of the case law is that plaintiffs cannot recover twice, under separate statutes, for the same injury. *Bedford Affiliates,* 156 F.3d at 426. If they can recover costs under CERCLA, then the state law claim is preempted. However, there may be additional areas not covered by CERCLA where a state law claim would not be duplicative. The court therefore agrees with plaintiffs that it would be inappropriate to dismiss this cause of action at the pleading stage. Defendant may assert this motion at a later time.

### C. Claim for Attorney's Fees

■ Lastly, DuPont asserts that plaintiffs' prayer for relief seeking attorney's fees must be dismissed based on the Supreme Court's decision in *Key Tronic Corp. v. United States,* 511 U.S. 809, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). In *Key Tronic,* the Court held that CERCLA "does not provide for the award of private litigant's attorney's fees associated with bringing a cost recovery action." *Id.* at 819, 114 S.Ct. 1960.

Plaintiffs point out that while *Key Tronic* limited recovery of attorney's fees, the Court proceeded to articulate an exception to that general holding. The *Key Tronic* Court stated that:

> The conclusion we reach with respect to litigation-related fees does not signify that all payments that happen to be made to a lawyer are unrecoverable expenses under CERCLA. On the contrary, some lawyers' work that is closely tied to the actual cleanup may constitute a necessary cost of response in and of itself under the terms of § 107(a)(4)(B).

*Id.* at 819–20. The Court found that the component of *Key Tronic's* claim covering

work performed by attorneys in identifying other potentially responsible parties would be recoverable. These endeavors provided an example of an effort that "significantly benefited the entire cleanup effort and served a statutory purpose apart from the reallocation of costs." *Id.* at 820, 114 S.Ct. 1960. As such, they were recoverable, being that they were "clearly distinguishable from litigation expenses." *Id.*

While it would appear that by the choice of words used in its prayer for relief, Solvent is requesting uncompensable attorney's fees related to the litigation, once again, the court will decline to dismiss this claim at this stage of the proceedings. It may be that some of Solvent's attorney's fees might fit within the *Key Tronic* exception. Accordingly, it cannot be said at present that "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim [for attorney's fees] that would entitle [them] to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99; *see also Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996).

In conclusion, the court denies DuPont's cross-motion to dismiss plaintiff's complaint.

## II. Solvent's Motion to Strike DuPont's Affirmative Defenses

■ Shortly after receiving DuPont's answer to its complaint, Solvent moved to strike DuPont's second, third, and fourth affirmative defenses and to dismiss the counterclaim. *See* Items 4–6. Rule 12(f) of the Federal Rules allows the court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "In evaluating such motions, courts construe the pleadings liberally to give the defendant a full opportunity to support its claims at trial, after full discovery has been made." *State of New York v. Almy Brothers, Inc.,* 971 F.Supp. 69, 72 (N.D.N.Y.1997). Like Rule 12(b)(6) motions, courts generally disfavor Rule 12(f) motions and do not routinely grant them. *Id.* (citing cases).

■ The standard for striking an affirmative defense is the mirror image of the standard for considering whether to dismiss for failure to state a claim. Under this standard, a court will not grant a Rule 12(f) motion "unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.,* 744 F.2d 935, 939 (2d Cir.1984), *vacated on other grounds and remanded,* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986). The affirmative defense that the plaintiff seeks to strike "must not present disputed and substantial questions of law, resolution of which could support the defendant's contentions." *Almy Brothers,* 971 F.Supp. at 72.

### A. Solvent's Motion to Strike DuPont's Second Affirmative Defense

■ As its Second Affirmative Defense, DuPont alleges that Solvent and ICC are barred by the DuPont Consent Decree and 42 U.S.C. § 9613(f)(2) from asserting any claim against DuPont with respect to any response costs incurred or to be incurred in responding to the release of any hazardous substances at or from the Solvent Site, including response costs incurred at the Olin Hot Spot related to hazardous substances released at or from the Solvent Site. Item 3, ¶ 31. DuPont quotes ¶¶ 17 and 21 [9] of the DuPont Con-

---

9. For the text of ¶¶ 17 and 21, *see* Background, DuPont Consent Decree Section, *supra.*

sent Decree with New York State, which essentially provide that DuPont is protected from any contribution actions for remediation of the Solvent Site due to release of hazardous substances at or from the Site. DuPont claims that it is entitled to contribution protection for matters addressed in the DuPont Consent Decree, including response costs resulting from the release of hazardous substances at or from the Solvent facility, and costs incurred in implementing the remedial program described in the ROD. However, the DuPont Consent Decree also expressly provides that the matters addressed by the Decree did *not* include claims for contribution for response costs incurred for release of hazardous substances emanating from the DuPont Facility and migrating to the Solvent facility. *See* Item 1, Ex. D, ¶ 19(b). DuPont acknowledges its potential liability in this regard, but notes that Solvent's complaint does not seek to recover response costs over and above those incurred in implementing the remedy specified in the ROD as a result of releases from the DuPont Facility. Rather, it seeks contribution from DuPont for "some or all of the response costs incurred at the 3163 Buffalo Avenue Site and the Hot Spot." Item 1, ¶ 21.

Solvent moves to strike this affirmative defense, asserting that DuPont seeks to bar *any* claim for contribution for response costs incurred in responding to the release of hazardous substances at or about the 3163 Buffalo Avenue Site. Item 5, p. 3. Solvent maintains that DuPont has ignored ¶ 19(b) [10] of the Consent Decree, which reserves Solvent's right to seek contribution if hazardous substances have

been released at DuPont's nearby facility and have migrated to the Buffalo Avenue Site or Hot Spot. *Id.* According to Solvent, reading all of the relevant consent decrees together in their entirety and giving effect to all of the provisions contained therein, it is clear that the parties intended to carve out from any contribution protection those claims for response costs associated with contamination migrating or emanating from the DuPont Facility to the 3163 Buffalo Avenue Site and/or the Olin Hot Spot. *Id.*, p. 5; *see also* Item 18, p. 16.

Solvent asserts that DuPont will not have to pay additional monies to clean up hazardous substances resulting from its former operations at the 3163 Buffalo Avenue Site-*i.e.*, it will not "pay twice for the same nexus to the site …." Item 18, p. 16. However, it *would* have to pay for its fair share of any contamination attributable to migration from the DuPont facility. *Id.*, p. 17. The complaint seeks contribution for "some or all" of the response costs at the Site and the Olin Hot Spot. DuPont views this claim as potentially requiring it to pay twice for remediation at the Solvent site, including remediation that may have been covered by the Consent Decree.

Because DuPont's second affirmative defense presents, at the least, disputed questions of contract law concerning the scope of contribution protection afforded by the DuPont Consent Decree, and because there is some ambiguity about the scope of contribution that plaintiffs are seeking, the court will not strike this affirmative defense at this time. Further litigation will clarify the scope of Solvent's claim against DuPont.[11]

---

**10.** For the text of ¶ 19(b), *see* Background, DuPont Consent Decree Section, *supra.*

**11.** During oral argument, Solvent's counsel noted that the contribution amount DuPont paid pursuant to the 1997 DuPont Consent Decree had to do with contamination related

to DuPont's activities during the World War II era, when DuPont owned and operated a plant at the Buffalo Avenue Site. The current claim for contribution is for DuPont's alleged contamination of the groundwater at the Site, which Solvent is cleaning up.

## B. Solvent's Motion to Strike DuPont's Third Affirmative Defense

■ By way of its third affirmative defense, DuPont notes that between 1973–1977, Solvent manufactured various chlorinated benzenes and other substances at the Buffalo Avenue site. Item 3, ¶ 32. DuPont argues that to the extent that the DuPont plant released unrelated organic compounds that may have migrated to the Site or the Hot Spot, that release and/or migration did not cause Solvent to incur response costs in performing the remedial actions necessitated by the Solvent Consent Decree, and required by the ROD. *Id.*, ¶¶ 34, 35. DuPont also raises the causation argument here, contending that Solvent has not pleaded facts establishing that the release of hazardous substances from the DuPont facility *caused* Solvent to incur any response costs, and what those response costs were. DuPont asserts that "Solvent's inability to establish that the cost of the ROD-mandated remedy for the Solvent Facility has increased, or will increase, as a result of releases or threatened releases from the DuPont Facility would preclude the imposition of liability on DuPont, and thus constitutes a valid and viable defense." Item 9, p. 21.

Solvent responds that DuPont's factual allegations contained in the Third Affirmative Defense, even if true, "fail to support any legally cognizable defense to CERCLA liability," because CERCLA, as a strict liability statute, is subject only to the defenses set forth in the statute.[12] Item 5, pp. 5–6. Solvent challenges DuPont's assertion that DuPont cannot be held liable to plaintiffs because the migrating substances did not "cause" plaintiffs to incur any response costs. Lastly, plaintiffs claim that so long as they can show that hazardous substances generated by DuPont have come to be located at the Solvent Site or the Olin Hot Spot, and that plaintiffs have incurred response costs cleaning up *any* hazardous substances there, DuPont can be held liable. *Id.*, p. 8.

■ Once again, the parties are debating the role of causation in pleading a *prima facie* case, which has been discussed earlier. Although a plaintiff is not required to plead causation as an element of a claim for contribution under CERCLA, DuPont's point is well taken that causation still remains an issue with which Solvent must contend in the allocation stage of the proceedings.[13] If DuPont can show, for example, that the hazardous substances that allegedly migrated from its facility to the Solvent Site did not cause any contamination and response costs that could be attributed to it, DuPont would have a viable defense. *See Memphis Zane May Assoc. v. IBC Mfg. Co.*, 952 F.Supp. 541, 548 (W.D.Tenn.1996).

The court thus declines to strike DuPont's third affirmative defense.

## C. Solvent's Motion to Strike DuPont's Fourth Affirmative Defense

■ In its fourth affirmative defense, DuPont makes reference to the Order on Consent it entered into with the DEC in 1989 to eliminate or mitigate the release and migration of contaminants at and from the DuPont plant. Item 3, ¶ 37. DuPont argues that the DEC, through the Order on Consent, determined that it was not necessary to address DuPont contaminants in the bedrock groundwater in the eastern section of the plant, despite the fact such contaminants were known to be migrating

---

12. These statutory defenses to liability include an act of God, an act of war, or an act or omission of a third party. 42 U.S.C. § 9607(b).

13. Defendants bear the burden of establishing a reasonable basis for apportioning liability or that the harms are distinct. *Alcan*, 990 F.2d at 722.

from the DuPont facility. Item 9, p. 21. Therefore, concludes DuPont, the release of such contaminants cannot be considered to have necessitated any of the remedial actions required by the ROD at the Solvent facility. *Id.*

Solvent moves to strike this affirmative defense. According to Solvent, DuPont does not allege that DuPont's efforts have prevented the migration of contaminants from the DuPont Facility, or that the 1989 Order on Consent releases DuPont from liability for off-site migration.[14] Solvent argues that since this affirmative defense does not fall within the statutory framework, it must be stricken from the answer. Item 5, p. 8.

For reasons similar to those underlying the ruling on Solvent's motion to strike the third affirmative defense, the court declines to strike DuPont's fourth affirmative defense. DuPont seeks to show that it implemented a number of remedial programs with the result that releases from its facility did not cause Solvent to incur response costs at the Solvent Site or the Olin Hot Spot. The court agrees with Solvent that the 1989 Order on Consent does not release DuPont from liability for off-site migration, nor does it fit within the statutory framework that would allow it to escape CERCLA liability. Still, DuPont may be able to prove facts to show that the remediation implemented under the 1989 Order on Consent prevented or minimized the contamination to such an extent as to reduce or obviate any contribution in the allocation phase.

Accordingly, Solvent's motion to strike DuPont's fourth affirmative defense is denied.

### D. Solvent's Motion to Dismiss DuPont's Counterclaim for Declaratory Judgment

In its counterclaim, DuPont seeks a judgment declaring the respective rights of the parties pursuant to paragraphs 17, 19(b), and 21 of the 1997 DuPont Consent Decree. Solvent moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss this counterclaim on the ground that it fails to state a claim upon which relief may be granted.

As Solvent points out, the counterclaim is essentially based on DuPont's second and third affirmative defenses. Item 5, p. 9. Solvent contests DuPont's reading of the DuPont Consent Decree that ¶¶ 17 and 21 bar *any* claim for contribution by plaintiffs, and that ¶ 19(b) authorizes contribution only for "incremental or additional costs" incurred by plaintiffs to the extent the costs are attributable to material migrating from DuPont's facility. Solvent also notes that even if the court "accepts DuPont's assertion that [plaintiffs] may have incurred costs addressing releases not attributable to DuPont, such facts are irrelevant to the issue of DuPont's liability." Item 5 p. 11.

DuPont counters that the debate concerning the proper construction of the Consent Decree and the scope of contribution is the kind of dispute that a declaratory judgment is meant to address. Item 9, p. 22. DuPont argues that its reading of ¶ 19(b) is the only construction of the Consent Decree comporting with its provisions and with CERCLA jurisprudence. It urges the court to treat Solvent's motion to dismiss the counterclaim and DuPont's response thereto as cross-motions for summary judgment. *Id.*, p. 24.

---

**14.** At oral argument, Solvent's counsel noted that the DuPont Order on Consent did not relate to the contribution issues between Solvent and DuPont; it only affected the rights between DuPont and New York State.

Once again, each party is partially correct. Solvent is correct that nothing in the DuPont Consent Decree or CERCLA jurisprudence shields DuPont from liability for the migration of hazardous substances from the DuPont facility to the Solvent facility. It is also correct that it is not required at the liability stage to prove that hazardous substances from the DuPont plant specifically caused Solvent to incur response costs that it would not have otherwise incurred. On the other hand, DuPont is correct that Solvent's interpretation of the Consent Decree may require DuPont "to pay yet another portion of those same costs, over and above its equitable share . . . ." Item 24, p. 4.

Accordingly, the court finds that DuPont has asserted enough facts in its counterclaim to state a claim-*i.e.*, that interpretation of certain paragraphs in the Consent Decree bears on the protection from contribution it may be due in this action. The court therefore declines to dismiss DuPont's counterclaim for declaratory judgment. By the same token, the court also finds that genuine issues of fact remain with respect to the respective rights of the parties pursuant to paragraphs 17, 19(b), and 21 of the 1997 DuPont Consent Decree, and declines to grant summary judgment in favor of DuPont on its counterclaim.

### III. Solvent's Motion for Leave to Amend the Complaint

On September 21, 2001, Solvent moved pursuant to Fed.R.Civ.P. 15(a) for leave to amend the complaint to assert an additional claim against DuPont for imminent and substantial endangerment under RCRA Section 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B). Item 15. DuPont opposed the motion, Item 26, and Solvent filed a reply memorandum. Item 29. For the reasons set forth below, Solvent's motion to amend is granted.

Fed.R.Civ.P. 15(a) provides that leave to amend "shall be freely given when justice so requires." The seminal case on leave to amend, *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), held that:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given."

*Id.* at 182, 83 S.Ct. 227.

 Where it appears that granting leave to amend "is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citing *Foman,* 371 U.S. at 182, 83 S.Ct. 227); *see also Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("where . . . there is no merit in the proposed amendments, leave to amend should be denied"). While "futility" is a valid reason for denying a motion to amend, this is true "only where it is 'beyond doubt that the plaintiff can prove no set of facts in support' of his amended claims." *Pangburn v. Culbertson,* 200 F.3d 65, 71 (2d Cir.1999) (citation omitted). Absent a clear showing of prejudice, undue delay, or bad faith, it is an abuse of discretion to deny leave to amend. *Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir.1993).

Solvent asserts that the jurisdictional prerequisite to filing the imminent and substantial endangerment claim (the "RCRA claim") has been met. Solvent mailed notice of the RCRA claim to the

proper parties, including defendant, 90 days before assertion of the claim.[15] Item 16, p. 3. Solvent alleges in its proposed RCRA claim that the hazardous substances emanating from the DuPont Facility and migrating to the 3163 Buffalo Avenue Site and Olin Hot Spot constitute hazardous wastes which present an imminent and substantial endangerment to health and/or the environment. Item 17, Ex. B (proposed amended complaint), ¶¶ 26–31. In its prayer for relief, Solvent asks the court to order DuPont to "take such action as is necessary to abate the imminent and substantial endangerment which it caused or to which it has contributed." *Id.*, p. 7, ¶ D.

DuPont argues that the motion for leave to amend should be denied because (1) the complaint constitutes an improper collateral attack on the Solvent and DuPont Consent Decrees, as well as the ROD; and (2) amendment would be futile since (a) plaintiffs lack standing to bring this RCRA suit, (b) plaintiffs' claim is subject to dismissal for lack of subject matter jurisdiction, and (c) plaintiffs' claim is subject to dismissal on the basis that an indispensable party has not been joined.

### 1. Collateral Attack on the Consent Decrees and the ROD

 DuPont asserts that:

[W]hatever danger is posed by the alleged presence of hazardous substances at the Solvent Facility is already being addressed by the implementation of the remedial actions set forth in the ROD. The Solvent Consent Decree, as entered by this Court, obligates Solvent to implement the ROD-mandated remedial actions for the Solvent Facility. Thus, by seeking to amend its complaint to add [the RCRA claim], Solvent is, in effect, asking this Court to amend both the Solvent Consent Decree and the Du-

Pont Consent Decree to shift some of the responsibility for implementing the ROD-mandated remedy from Solvent to DuPont.

Item 26, pp. 5–6.

The court disagrees with DuPont's contention that the RCRA claim serves as a collateral attack on the Consent Decrees or the ROD. Both the Solvent and DuPont Consent Decrees provide that the "Matters Addressed" do not include any response costs or other relief for the release of hazardous substances emanating from the DuPont Facility and migrating to the Solvent Site or the Olin Hot Spot. *See* Item 1, Ex. D, ¶ 19(b); *see also id.*, Exs. A and C, ¶ 45(b). Clearly, by their terms, all of the Consent Decrees anticipated that at some time in the future, plaintiffs may seek relief from DuPont for migration of hazardous substances from the DuPont Facility to the Site. Accordingly, Solvent's assertion of those claims, including a cause of action under RCRA, does not constitute an impermissible collateral attack on those Consent Decrees.

### 2. Futility of Amendment

#### a. Standing

 DuPont asserts that granting leave to amend would be futile because plaintiffs' RCRA claim is subject to dismissal for lack of standing. To establish standing, a plaintiff must show three elements: (1) that it has suffered injury-in-fact; (2) that the defendant's complained-of conduct caused such injury-in-fact; and (3) a likelihood that the relief requested will redress the plaintiff's claimed injury. *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 103–04, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). DuPont contends that the proposed RCRA claim fulfills neither element (2) nor (3). According to DuPont,

---

**15.** This 90–day requirement is found in 42 U.S.C. § 6972(b)(2)(A).

any injury-in-fact Solvent has suffered concerning conditions at the Solvent Facility is unrelated to any conduct by DuPont regarding the DuPont Facility; and if the court were to order DuPont to abate the imminent hazard at the Solvent Facility, DuPont would be required to undertake a portion of the work Solvent is obligated to perform under the Consent Decree or to do work inconsistent with the ROD.

On the contrary, plaintiffs have alleged that the hazardous substances migrating from the DuPont to the Solvent facility present an imminent and substantial endangerment to health and/or the environment. Item 17, Ex. B, ¶ 30. This is sufficient to meet the liberal threshold applied to standing challenges in the context of environmental citizen suits. *See, e.g., Hudson Riverkeeper Fund, Inc. v. Atlantic Richfield Co.*, 138 F.Supp.2d 482, 485–86 (S.D.N.Y.2001); *Aiello v. Town of Brookhaven*, 136 F.Supp.2d 81, 105–06 (E.D.N.Y.2001). Solvent's assertion that DuPont's allegedly hazardous substances are contaminating Solvent's site is enough to satisfy the injury-in-fact element of the standing inquiry.

In addition, the court would be able to award plaintiffs relief that would redress the RCRA claim. As Solvent points, out, "[a]ny order that requires DuPont to prevent the migration of hazardous substances to or near the property possessed and occupied by Plaintiffs would abate the potential endangerment created by this contamination and thus redress their concerns ...." Item 29, p. 8.

The court therefore finds that plaintiffs have standing to bring their RCRA claim.

### b. Subject Matter Jurisdiction

 DuPont next argues that the RCRA claim would be subject to dismissal under Rule 12(b)(7) for lack of subject matter jurisdiction. According to DuPont, all the conditions of RCRA Section

7002(b)(2)(C)(iii) are present here, which would preclude Solvent from maintaining this claim.

RCRA Section 7002(b)(2)(C)(iii) provides:

> (C) No action may be commenced under subsection (a)(1)(B) of this section if the State, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment -
>
> . . . . .
>
> (iii) has incurred costs to initiate a Remedial Investigation and Feasibility Study under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C.A. § 9604] and is diligently proceeding with a remedial action under that Act [42 U.S.C.A. § 9601 et seq.].

42 U.S.C. ¶ 6972(b)(2)(C)(iii). DuPont recounts that the Solvent Consent Decree resulted from the State's litigation against Solvent and others, pursuant to CERCLA Section 107(a). The State sought reimbursement of the costs DEC had expended in conducting the RI/FS at the Solvent facility and the abatement of contamination at the site. Item 26, pp. 14–15. Once the State recovered its costs, Solvent assumed the abatement remedy pursuant to the Solvent Consent Decree. *Id.* Although the abatement "baton" has been passed from the State to Solvent, DuPont nevertheless insists that "the State is, and has been, proceeding with a CERCLA remedial action that will abate the condition that Solvent claims is the basis for its proposed RCRA citizen suit claim against DuPont." *Id.,* p. 15. In a footnote, DuPont refers to a decision by a district court in the Second Circuit holding that "unless the State has entered into a joint federal-state cooperative agreement pursuant to CERCLA

§ 104(d)(1) ... its response efforts cannot be considered to have been conducted under CERCLA § 104, as required to trigger the citizen suit prohibition set forth at RCRA § 7002(b)(2)(C)(ii), (iii)." *Id.*, n. 13 (citing *Orange Envt. Inc. v. County of Orange*, 860 F.Supp. 1003, 1025–28 (S.D.N.Y.1994)). DuPont then refers to *McGregor v. Industrial Excess Landfill, Inc.*, 709 F.Supp. 1401, 1406–08 (N.D.Ohio 1987), as disallowing a private action where state and federal agencies expended public funds for investigation and cleanup, even when those expenditures were not made pursuant to CERCLA Section 104. *Id.*

While Solvent admits that the State incurred costs conducting a supplemental remedial investigation and feasibility study at the Site, the investigation and study were not conducted under Section 104 of CERCLA. Solvent cites the express language of the statute that such studies must be conducted under Section 104 of CERCLA [16] in order to bar a RCRA cause of action. Section 104 is invoked when states are authorized to act pursuant to a contract or cooperative agreement with the federal government. No such agreement exists here. The federal government has appeared only as a defendant, and not in its capacity as a protector of the environment. Thus, the costs incurred by the State in conducting its supplemental RI/FS were not incurred under Section 104.

Moreover, the State is not "diligently proceeding" with a remedial action under CERCLA. Plaintiffs, not the State, are remediating the 3163 Buffalo Avenue Site and Olin Hot Spot, and their remedial efforts have been conducted under the State's Environmental Conservation Law, not CERCLA. Item 29, pp. 9, 10. Thus, the exception under RCRA Section 7002(b)(2)(C)(iii) does not apply.

Solvent's position that this court has subject matter jurisdiction under RCRA is amply supported by case law. *See, e.g., Orange Envt.*, 860 F.Supp. at 1028; *Interfaith Comm. Organ. v. Alliedsignal, Inc.*, 928 F.Supp. 1339 (D.N.J.1996). The *McGregor* case, relied upon by DuPont, is inapposite. The issue there was whether a private citizen's action against a landfill could go forward under RCRA, when the State had initiated suit and the EPA had already expended $400,000 to initiate an RI/FS under Section 104 of CERCLA. Although it was not clear whether the federal and state governments had entered into a Section 104(d)(1) agreement, the court did find that the cost incurred by the federal government in performing the RI/FS (since the federal government has authority under Section 104 to perform an RI/FS) barred plaintiff's RCRA claim by operation of Section 7002(b)(2)(A)(iii).

Given the statutory provision and its interpretation in case law, the court finds that plaintiffs' claim would not be subject to dismissal on the basis of subject matter jurisdiction, and leave to amend would not prove futile on the basis of this argument.

**16.** CERCLA Section 104, provides:

Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act ... to remove or arrange

for the removal of, and provide for remedial action relating to such hazardous substance .... No [RI/FS] shall be authorized except on a determination by the President that the party is qualified to conduct the RI/FS and only if the President contracts with or arranges for a qualified person to assist the President in overseeing and reviewing the conduct of such RI/FS ....

42 U.S.C. § 9604(a)(1).

### c. Failure to Add an Indispensable Party

■ Lastly, DuPont asserts that plaintiffs' motion for leave to amend should be denied on the ground that the RCRA claim is subject to dismissal for failure to add the DEC as an indispensable party under Fed.R.Civ.P. 19. DuPont reasons that if Solvent is successful on this claim, the court would require DuPont to take whatever remedial actions the court deems necessary, and since DEC is charged with enforcing the law against those persons responsible for environmental degradation, DEC has a "paramount interest" in the RCRA claim. Item 26, pp. 17–18. In addition, because the DEC has already conducted the RI/FS and issued the ROD, the DEC would have an equal paramount interest in any changes the court might make concerning the remedy selected pursuant to the RCRA claim. DuPont concludes that since there is a possibility that it may be required by the court to undertake remedial actions inconsistent with those set forth in the ROD, the DEC is a necessary party within the. meaning of Rule 19. DuPont adds that DEC's involuntary joinder would be precluded by the doctrine of sovereign immunity under the Eleventh Amendment. Consequently, application of the factors contained in Rule 19 related to an indispensability determination would require the court to find that the RCRA suit should not be permitted to proceed in DEC's absence, warranting denial of leave to amend.

Rule 19 compels joinder of a party who has "an interest related to the subject of the action and is so situated that the disposition of the action" in the absence of such party may leave the named defendant "subject to a substantial risk of incurring ... inconsistent obligations" by reason of the absentee's interest. Fed.R.Civ.P. 19(a)(2)(ii). Where a necessary party cannot be joined, the court must determine whether the action may proceed without that party, or whether the action should be dismissed because that party is indispensable. In making an indispensability determination, the court should consider: (1) whether and to what extent a judgment rendered in the party's absence might be prejudicial to those parties who have been joined; (2) whether and to what extent the prejudice to existing parties could be mitigated or avoided by fashioning an appropriate remedy; (3) whether a judgment rendered in the party's absence would be inadequate; and (4) whether the plaintiff will have an adequate remedy if the action must be dismissed for nonjoinder. *Id.*

The court finds Solvent's argument compelling. The cases cited by both Solvent and DuPont indicate, at least indirectly, that there is no requirement that state or federal environmental agencies involved in cleanup efforts must also be parties in those actions. DuPont's contention that it may be subject to inconsistent obligations is speculation at this point. For example, it is possible that the court could order DuPont to take remedial action at its facility to prevent the migration of hazardous substances to the Solvent facility, which would have no bearing on the Solvent Consent Decree and ROD. This result could also provide adequate relief to plaintiffs, without requiring the DEC to be joined.

For all the reasons stated above, the court grants Solvent's motion for permission to amend its complaint to add the RCRA cause of action.

## IV. Solvent's Motion to Consolidate

On August 8, 2001, plaintiffs filed a motion pursuant to Fed.R.Civ.P. 42(a) seeking to consolidate this action (No. 01–CV–425) with the original "Solvent" action (No. 83–CV–1401). Items 1028–1030 in No. 83–CV–1401. Rule 42(a) provides:

When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

■ As the rule indicates, among the factors the court should consider in deciding whether to consolidate are: identity of the parties, the existence of common questions of law and fact, and the potential for creating confusion by combining multiple claims. *Hooker Chemicals & Plastics Corp. v. Diamond Shamrock Corp.*, 96 F.R.D. 46, 48–49 (W.D.N.Y.1982). In its analysis, the court must "examine the special underlying facts with close attention before ordering a consolidation." *In re Repetitive Stress Injury Litigation*, 11 F.3d 368, 373 (2d Cir.1993) (internal quotations and citation omitted).

■ In making its decision, the trial court "has broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284–85 (2d Cir.1990). This discretion, however, is not unfettered. *Id.* at 1285. The court "must balance the efficiency concerns against the potential for confusion or prejudice which may result from this move." *Kelly v. Kelly*, 911 F.Supp. 66, 69 (N.D.N.Y.1996). While "considerations of judicial economy favor consolidation," those considerations "must yield to a paramount concern for a fair and impartial trial." *Celotex*, 899 F.2d at 1285.

■ Finally, the burden is on the moving party in persuading the court to grant its motion to consolidate. *MacAlister v. Guterma*, 263 F.2d 65, 70 (2d Cir.1958); *see also Schacht v. Javits*, 53 F.R.D. 321, 325 (S.D.N.Y.1971) ("Plaintiff in his motion papers gives the Court no assistance in comparing the ... actions in order to determine the desirability of consolidation. Plaintiff's failure to marshall facts supporting consolidation and the reasoned opposition by ... the defendants are persuasive grounds for denying the motion.").

■ In its first set of filings in support of its motion, Solvent posits rather broad arguments that the two actions share common questions of law and fact. Solvent asserts that (1) both actions involve claims for contribution relating to the Buffalo Avenue Site and Olin Hot Spot; (2) the same substantive law-CERCLA and common law contribution-governs the claims in both actions; and (3) Solvent's allegations against DuPont are similar and directly related to its claims against Olin in the Solvent action. *See* Item 1029, p. 4. Solvent claims that consolidation would not cause undue delay, confusion, or prejudice. *Id.*, p. 5. In a later submission, Solvent provides specifics to support its contention that common questions of fact and law are involved in both actions: (1) "Virtually identical hydrogeological testimony" will be needed in the two actions to establish migration of groundwater contamination from both the Olin Facility and DuPont Facility to the Solvent Facility; (2) groundwater contamination at the Solvent Facility consists of certain contaminants attributable to Olin and other contaminants attributable to DuPont such that "[i]dentical groundwater data analysis will be required"; and (3) at trial, the court will be required to allocate remediation liability among Solvent, the remaining generator defendants in the Solvent action, other site operators, Olin and DuPont. Item 11, pp. 2–3. Solvent argues that if the actions are not consolidated, such allocation would have to occur at two separate times without having all of the nonsettling responsible parties before the court at the same time, entailing repetitive testimony and proof. Item 11, pp. 2–4.

DuPont counters with two arguments: Solvent's motion to consolidate is premature, due to the other outstanding motions to be resolved, and Solvent has failed to demonstrate the existence of significant questions of law and fact. Regarding the first argument, given that this order resolves the other outstanding motions, Solvent's motion for consolidation is ripe for adjudication. Concerning the second argument, DuPont sets forth a number of differences between the two actions that it insists warrant denial of consolidation, which the court finds persuasive.

First, the claims in the Solvent action against the supplier defendants, predicated on CERCLA Section 107(a)(3), require a showing that these defendants arranged for disposal of their wastes at the Solvent plant between 1973–1978. This inquiry would entail whether the transactions between Solvent and these defendants concerned sales for legitimate raw materials or arrangements for waste disposal. These issues, asserts DuPont, have nothing in common with the alleged release of hazardous substances at the DuPont plant and their migration to the Solvent facility. The legal issue between Solvent and the supplier defendants revolves around the equitable share of each liable party concerning all the response costs incurred by Solvent as a result of the release of hazardous substances at the Solvent Facility. The legal issue as framed by DuPont in the DuPont action concerns whether the release and migration of hazardous substances caused Solvent to incur response costs and what specific costs were attributable to the DuPont release.

DuPont also contends that the claims between Olin and Solvent in the Solvent action are different from Solvent's claims against DuPont. The possible routes of migration from the DuPont and Olin facilities are separate, "raising essentially unrelated migration pathway fact issues."

Item 8, p. 10. While the claims involve two-site causation issues, their resolution does not raise common questions of fact. DuPont observes that the contaminants attributed to Olin are chlorobenzenes, the same contaminants Solvent released at its facility. The impact of Olin's chlorobenzenes on Solvent's response costs will be different than the response costs caused by DuPont's chemicals, TCE and PCE.

Olin has also asserted a counterclaim against Solvent related to its cleanup of Gill Creek, which runs between the Solvent and Olin facilities. Given that DuPont has not asserted a contribution claim against Solvent concerning its part in cleaning Gill Creek, there would be no common questions of law or fact related to this counterclaim.

DuPont pointedly comments that it "strains credulity" for Solvent to state that the same evidence will be needed to demonstrate that the chlorinated benzenes present at the Olin Hot Spot are attributable to releases from the Olin Facility, while the presence of chlorinated aliphatic compounds are attributable to releases from the separate DuPont Facility. Item 14, p. 4. Allowing that one set of groundwater data may be used to identify the Hot Spot contaminants, DuPont concludes that this would hardly qualify as a common issue of fact or law.

Concerning Solvent's statement that both cases would involve virtually identical hydrogeologic testimony, DuPont points to the fact that Gill Creek, which runs between the Solvent and Olin Facilities, has a profound impact on groundwater flow. The water flow raises issues regarding the alleged migration of contaminants from the Olin Facility to the Solvent Facility that have no connection with migration of contaminants from the DuPont Facility to the Solvent Facility. Thus, the hydrogeologic evidence in both cases will be very

different. Lastly, DuPont argues that even if Solvent could establish that a release of contaminants from DuPont's facility caused it to incur certain response costs, that would not mean that DuPont would "be put back into the allocation pool with the parties in the first action." Item 14, p. 6. The costs in the Solvent action would be allocated among parties determined to be responsible for the Solvent Facility. In this action, the impact of the Consent Decree must be assessed concerning the contribution Solvent seeks from DuPont, which would involve separate concerns. Thus, the "universe of costs" in both actions are separate and distinct and should more appropriately be addressed in separate actions. *Id.,* p. 7. Finally, at oral argument DuPont's counsel observed that granting Solvent leave to amend the complaint to assert a RCRA claim against DuPont-a claim not asserted against any other parties-provides another reason for denying consolidation.

The court finds DuPont's arguments persuasive. In addition to the fact that Solvent proffered its arguments in a cursory manner, providing overarching conclusions with few specifics in support, DuPont has pointed out with sufficient particularity the differences between the Solvent and DuPont actions warranting a denial of the motion to consolidate. The Solvent action consists of two main sections: the supplier defendants, with their particular factual and legal issues, which have no similarities to the DuPont facts and issues, and the Olin action, which has legal similarities with the DuPont action but few factual similarities. DuPont has successfully contested Solvent's assertion that virtually identical hydrogeological testimony would be necessary in the DuPont action and the Solvent action with respect to Olin. The court credits DuPont's arguments and thereby denies Solvent's motion to consolidate.

## CONCLUSION

For all the reasons set forth above, the court (1) denies DuPont's cross-motion for summary judgment dismissing the complaint and granting declaratory judgment, Item 9; (2) denies Solvent's motion to strike the second, third, and fourth affirmative defenses contained in DuPont's answer and dismiss DuPont's counterclaim, Item 4; (3) grants Solvent's motion for leave to file an amended complaint to add a RCRA claim, Item 15; and (4) denies Solvent's motion to consolidate. Item 1028 in No. 83–CV–1401.

Plaintiffs shall accomplish the service and filing of the amended complaint forthwith, and defendant shall plead in response thereto, all in accordance with the Federal Rules of Civil Procedure.

So ordered.