The State of NEW YORK and John P. Cahill, as Commissioner of the New York State Department of Environmental Conservation, Plaintiffs,

v.

MOULDS HOLDING CORPORATION, Defendant.

No. 00–CV–1034.

United States District Court, N.D. New York.

Jan. 31, 2002.

**Memorandum–Decision & Order**

McAVOY, District Judge.

This action arises out of the environmental remediation of the landfill of the Town of Van Buren located in Ogandaga County, New York. The Town of Van Buren ("Town") owned and operated the landfill from 1963 until it was closed in 1989. At that time, it appeared that the landfill was responsible for groundwater contamination in the surrounding area. In 1989, the State of New York Environmental Conservation Department ("State") entered into a state assistance contract ("SAC") with the Town. Pursuant to New York Environmental Conservation Law § 27–1313(5)(g), the

State reimbursed the Town for 75% of its clean-up costs, or $2,257,393.00.

The State then brought this action pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") and state common law to recover the money paid to the Town, as well as additional expenses incurred by the State. Moulds Holding Corporation ("Moulds") now moves for summary judgment on the basis that the State does not have a viable claim under CERCLA § 107(a), that Moulds is not a successor in interest to the Syroco Corporation, that there is no genuine issue of material fact as to disposal of hazardous substances at the site, and that the state law claims are either pre-empted by CERCLA or barred by the statute of limitations.

## I. Standard for Summary Judgment

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, *see Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999), *cert. denied,* 529 U.S. 1098, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). With this standard in mind, the Court will consider Mould's claims.

## II Moulds' Motion for Summary Judgment

### A. The State's Claim Under § 107 [1]

Moulds first contends that the State does not have a viable claim under § 107 of CERCLA because it is not the real party in interest. Alternately, Moulds contends that the State should be limited to a § 113(f) contribution claim because it is essentially suing in place of the Town.

In 1989, the Town entered into an administrative consent order with the State requiring it to perform remedial actions. Subsequently, the State also entered into the SAC with the Town and reimbursed the town 75% of the costs the Town incurred while remediating the site. The SAC required the Town to seek recovery of the costs incurred from other responsible parties, and provided that the Town could lose its funding and might be required to repay the State should it fail to attempt recovery of the funds expended. Finally, the SAC provided that when the Town recovered funding from other parties, the Town would return funds to the State, such that the State contribution would always remain no higher than 75% of the Town's unrecovered costs.

Based on the SAC, Moulds claims that it is the Town who incurred response costs within the meaning of CERCLA and the State merely acted as a funding agency. Thus, Moulds contends that it is the Town that must bring the action, and further that the Town, or the State acting on its behalf, would be limited to a contribution action under § 113(f) because it is a potentially responsible party ("PRP"). Finally, Moulds argues that the result of allowing the State to sue instead of the Town is either double recovery against Moulds or increased liability for the Town.[2] The State responds, relying on *Town of New Windsor v. Tesa Tuck, Inc.,* 935 F.Supp. 317 (S.D.N.Y.1996), that the State did incur response costs when it reimbursed the

---

**1.** The Court notes that there is no dispute that the State may bring a § 107 claim against Moulds for its individual costs incurred. Thus, the Court will only address the amount given to the Town by the State under the SAC.

**2.** The Town does not assert this argument on its own behalf.

Town, and thus, the State should be allowed to sue under § 107 asserting joint and several liability against Moulds.

#### 1. 107(a) and 113(f)

Section 107(a) allows an innocent party to bring an action to recover its response costs incurred in remediating a facility as defined by § 9601(9), as long as those response costs are consistent with the National Contingency Plan (NCP). *See* 42 U.S.C. § 9607(a)(4)(B); *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 514 (2d Cir.1996) *cert. denied,* 524 U.S. 926, 118 S.Ct. 2318, 141 L.Ed.2d 694 (1998). Liability under § 107(a) is joint and several. *B.F. Goodrich,* 99 F.3d at 514. Thus, should the State be allowed to recover under § 107(a), it would be entitled to recover from Moulds all of its response costs incurred.

■ Section 113(f) by contrast provides for contribution between PRPs. 42 U.S.C. § 9613; *See Bedford Affiliates v. Sills,* 156 F.3d 416, 423–25 (2d Cir.1998). Liability under § 113(f) is several. Each party must pay only for the amount of waste it contributed to the site. *Bedford Affiliates,* 156 F.3d at 423. The Court is also permitted to consider equitable factors in apportioning liability under § 113. Further, PRPs are limited to bringing an action under § 113(f) and may not bring an action under § 107(a). *Bedford Affiliates,* 156 F.3d at 424. Thus, the Town would be limited to a contribution action in any suit it brought against Moulds. Moulds argues that this provision should apply with equal force to the State in this case because it stands in place of the Town in its recovery action.

#### 2. General CERCLA Law

This Court starts with the general proposition that "CERCLA is a 'broad remedial statute.'" *B.F. Goodrich,* 99 F.3d at 514 (quoting *B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1197 (2d Cir.1992)). The dual purposes of CERCLA are to facilitate clean up of hazardous waste sites and to ensure that those responsible for creating the hazardous waste sites pay for the clean-up. *B.F. Goodrich,* 99 F.3d at 514 (quoting Senate Report, S.Rep. 848, 96th Cong., 2d Sess. 13 (1980)). Further, "[a]s a remedial statute, CERCLA should be construed liberally to give effect to its purposes." *Id.* (citing *Schiavone v. Pearce,* 79 F.3d 248, 253 (2d Cir.1996)).

The Court also notes that CERCLA encourages a variety of settlement arrangements. *See In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 119 (2d Cir.1992) (one purpose of CERCLA is to encourage settlements); *see also Town of New Windsor v. Tesa Tuck, Inc.,* 935 F.Supp. 317, 321 (S.D.N.Y.1996) (discussing some of the settlement arrangements allowed or encouraged in the context of CERCLA litigation). In particular, Section 122 of CERCLA expressly provides for agreements between the federal government and PRPs, to have the settling PRPs clean up the hazardous waste sites. 42 U.S.C. § 9622. Under this section, the federal government is expressly authorized to recover money it pays to the PRPs conducting the clean-up by a joint and several liability action under § 107(a), rather than by a contribution action under § 113(f). *Id.; see also Town of New Windsor,* 935 F.Supp. at 321 (discussing some of these arrangements). In circumstances where some parties have settled and others have not, the courts are forced to deal with the complicated issues of allocation following partial settlements. *See, e.g.,* Daniel Risel, et al., *Private–Party Hazardous Material Litigation,* SF97 ALI–ABA COURSE OF STUDY 483, 501 (June 25–29, 2001) (discussing some of the complicated allocation issues dealt with by federal courts handling CERCLA claims with several parties, including partial settlements).

Another basic purpose of CERCLA is to provide a continued source of funding to the state and federal governments for their clean-up actions. Thus, the federal government has been allowed to bring a § 107(a) claim asserting joint and several liability against private PRPs even if the federal government is, itself, a PRP. *See United States v. Wallace*, 961 F.Supp. 969, 974 (N.D.Tx.1996) (citing *United States v. Kramer*, 757 F.Supp. 397, 414 (D.N.J. 1991); *United States v. Hunter*, 70 F.Supp2d 1100, 1106 (C.D.Ca.1999); *City of New York v. Exxon Corp.*, 766 F.Supp. 177, 198 (S.D.N.Y 1991)) (suggesting same logic would apply to state or some municipal actions). This purpose is equally clear in the context of a state fund, such as that used by the State of New York to help pay the remediation costs incurred by the Town of VanBuren. A continued source of funding is the only way to ensure continued clean-up actions.

■ Keeping in mind this history and the policy reasons that have formed other CERCLA decisions, the Court finds that the State may bring a section 107(a) claim against Moulds.

### 3. The State Incurred Response Costs

■ First, the State incurred response costs in the clean-up of the landfill in question. *See Town of New Windsor*, 935 F.Supp. at 319–322 (discussing what it means to incur response costs). The funds disbursed pursuant to the SAC went to assist the Town with remediation of the landfill in a manner consistent with CERCLA. There is no question that the State could have remediated the landfill on its own and then brought a claim against Moulds. Instead of relying on this system of clean-up, the New York State Legislature saw fit to enact N.Y. ENVIR.

CONS. L. § 27–1313(5)(b), (9) in order to encourage towns to clean-up their own problem areas by providing them monetary assistance. This system furthers the CERCLA purpose of facilitating timely clean-ups of hazardous waste areas. It would be contrary to the legislative intent of both CERCLA and the New York State environmental laws to curtail the State's ability to recover the money expended under the state statutory scheme, as long as the recovery sought also meets the criteria for bringing a CERCLA action.

Allowing the State to bring a claim to recover money expended pursuant to the statute furthers the goals of CERCLA by encouraging timely clean-up through these state-town arrangements. Consequently, allowing the State to maintain a § 107(a) action against Moulds for the money expended pursuant to the SAC is consistent with the purposes and policies of CERCLA.

### 4. There is no Double Recovery

■ Moulds argues that allowing the State to recover will result in a double recovery against Moulds. Moulds seems to suggest that because the SAC imposes an obligation on the Town to attempt recovery of response costs that the Court will somehow impose liability against Moulds in both a suit by the State and a subsequent suit by the Town. As previously mentioned, Courts have been dealing with complicated issues of allocation of liability for some time. Liability between Moulds and the Town can be apportioned here, just as it has in other cases involving multiple PRPs.[3]

In essence, the SAC is irrelevant to Moulds. It governs payment between the Town and the State, providing that the

---

**3.** The Court notes that Moulds has initiated an impleader action against the Town. Thus,

both the Town and Moulds will be parties to any judgment by the Court.

State is authorized to pay 75% of the Town's liability. There is nothing in the SAC that prevents the Court from entering a final judgment as between Moulds and the State and between Moulds and the Town. The relationship between the State and the Town is separate and distinct from the issue presented here. Even were the Town not present in this litigation, Moulds would ·have the ability to assert its payment to the State (assuming one occurs) as an equitable defense in any subsequent action by the Town. There is no danger of double recovery in this case.

██ To the extent that Moulds expresses concerns regarding the Town bringing an action to recover for its expenses not covered by the SAC, such concern is irrelevant. In the analogous case where a PRP settles with the Federal government, both the Federal government and the PRP can bring actions against non-settling PRPs. *See Private–Party Hazardous Material Litigation,* at 504 (discussing the double suit that can result for a non-settling PRP). The issue again becomes the necessity of allocating damages in proportion to the liability of the parties. While such allocations are complicated, they are necessitated by the current scheme of CERCLA.

The Court is mindful that the burden of proving what portion of harm is attributable to defendants under § 113 will fall to Moulds in this case, instead of the State. That is, however, the price paid by non-settling PRPs in similar situations. It is through this harsh result that courts have attempted to encourage settlement of environmental claims. *See Bedford Affiliates,* 156 F.3d at 427 (citing *In re Reading Co.,* 115 F.3d 1111, 1119 (3d Cir.1997)) (non-settling PRPs may face disproportionate

liability, a means of encouraging settlement).

The Court finds that the SAC does not affect the ability of the State to recover for the response costs it incurred, including the money paid to the Town for remediation of the cite. Consequently, Moulds motion for summary judgment on this grounds is denied.

## B. Successor Liability

Moulds next contends that it should not be liable as a successor corporation for any activity prior to 1980. In order to fully address this argument, the Court must review the corporate history of Moulds.[4]

### 1. Mould's Corporate History

The first Syroco Inc. was incorporated in New York in 1946. This entity owned the plant in Baldwinsville, New York, from which the waste that is the subject of this lawsuit is alleged to have come. From 1965 until 1980, Syroco, Inc. became affiliated with, or a division of, Rexall Drug and Chemical Company/Dart Industries Inc. In June of 1980, Services Industries, Inc. purchased substantially all of the assets of the Syroco Division of Dart, including the Baldwinsville plant. The assets were transferred to a Texas corporation known as Syroco, Inc. In 1986, the Texas corporation merged with a Delaware corporation and retained the name of Syroco, Inc.. In 1995, Marley Plastics Holdings purchased Syroco, which was transferred to Fiskars, Inc. and at some time in 1999 changed its name to Moulds Holding Corp. Moulds does not dispute that it was the entity which owned the Baldwinsville plant after 1980. Rather, Moulds contends that it is not liable for any environmental activities prior to that time. Thus, the issue is

---

4. There is no factual dispute as to the corporate history of Moulds. Consequently, the Court takes this information from the parties

Statements of Undisputed Material Facts and their memoranda of law facts sections.

whether Syroco, Inc., the Texas corporation was a successor to the Division of Dart Industries corporation.

### 2. Test for Successor Liability

■ The test used in the Second Circuit to determine successor liability is the substantial continuity test. *See Cooper Industires, Inc. v. Agway, Inc.*, 1997 WL 275075, at *1 (N.D.N.Y. May 19, 1997). Under this test, the Court must consider "whether the successor maintains the same business, with the same employees doing the same jobs, under the same supervisors, working conditions, and production processes, and produces the same products for the same customers." *Cooper Industries*, 1997 WL 275075, at *1 (quoting *B.F.Goodrich v. Betkoski*, 99 F.3d 505, 519 (2d Cir.1996)).

### 3. Moulds is a Successor

■ There is substantial evidence in the record that Moulds held itself out as the successor corporation and that, in fact, Moulds meets the test set forth above. The State has submitted a newspaper article in which the Syroco president states that no changes will be made in the company even though it was being sold by Dart Industries to the Texas corporation Services Industries, Inc. (Bassinson Decl. Ex. "M"). The article also indicates that there would be no personnel changes at Syroco. Nor were any of the officers changed. In particular, the president remained the same after the transition as before. *Id.* Also attached is the Purchase and Sale Agreement (Sales Agreement) between Dart and Services. (Bassinson Decl. Ex. "N"). The Sales Agreement transfers "substantially all ... of the assets, rights, properties and business of the Syroco Division" to Services Industries Inc. *Id.* The Sales Agreement further provides that "[a]t the Closing, Seller shall sell, transfer, assign and deliver to Buyer or its nominee all of the assets, properties, rights and

business of Syroco, whether tangible, intangible, real, personal or mixed, wherever located ..." *Id.* at ¶ 3.01. Thus, the same business was to be carried out by the successor corporation as was carried out by the corporation as it existed when affiliated with Dart Industries. The same personnel at all levels were in place. The successor corporation also produced the same products for its customers after the change in corporate structure. Consequently, Moulds qualifies as a successor corporation under the test, and Mould's motion for summary judgment is denied on this basis.

Although this finding renders Mould's claim that there is no evidence of waste disposal after 1980 moot, the Court will, in the interest of judicial economy, rule on that claim as well.

### C. Hazardous Waste Disposal

■ Moulds' next contention is that the State cannot meet its burden of coming forward with evidence that it deposited waste at the site subsequent to 1980. Because the Court found that Moulds is a successor to Syroco, the Court will consider all of the evidence that hazardous waste was deposited at the landfill.

■ Taking all of the evidence in the light most favorable to the Plaintiff, the Court must determine whether the waste deposited at the site contained hazardous substances and whether those same substances were found at the site. *Cooper Industries Inc. v. Agway Inc.*, 1997 WL 135925, at * 3 (N.D.N.Y. March 13, 1997).

A hazardous substance is defined as

(a) any substance designated pursuant to section 1321(b)(2)(A) of Title 33, (b) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (3) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal

Act ..., (d) any toxic pollutant listed under section 1317(a) of Title 33, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act ..., and (F) any imminently hazardous chemical substance or mixture with respect to which the [EPA] Administrator has taken action pursuant to section 2606 of Title 15.

42 U.S.C. § 9601(14). Quantity or concentration is not a factor for the Court to consider. *B.F. Goodrich,* 99 F.3d at 514 (citing *United States v. Alcan Aluminum Corp.,* 990 F.2d 711, 720 (2d Cir.1993)). Consequently, even where there is a dispute as to minimal amounts, summary judgment is inappropriate. *Id.*

The evidence of Mould's hazardous waste disposal includes an inspection report from July 9, 1976 including a photograph of ten drums of liquid and solid waste that were disposed of by Syroco employees. Upon questioning the employees, the inspector was told the barrels contained paint thinner. The odor was consistent with paint thinner. Abbot Aff. ¶ 2.

The evidence also includes testimony from an employee of the landfill, Clarence Bort, that during the time he was a gate guard, 1969–1978, he observed that the refuse coming from Syroco "could be a 5–gallon paint pail, a full load of wooden pallets, several barrels." Bassinson Decl., Ex. "A", Bort Depo. 17. He also recalls that Syroco was there almost "daily." *Id.* Mr. Bort did not, however, inspect the pails or barrels and did not recall any liquid coming out of them. *Id.* at 17, 66. He did recall seeing dry paint in them at some point. *Id.* at 65. Around 1985 or 1986, he observed paint filters in the refuse brought from Syroco. *Id.* at 67. These filters were wet. *Id.* at 68. These filters were not, however, tested. *Id.* at 69. Also attached to the State's motion papers is an undated New York State De-

partment of Environmental Quality questionaire indicating that Syroco dumped liquid waste paint and waste paint filters at the Van Buren dump at some time. (Ex. "C" to Bassinson Aff.).

The evidence supplied by the State, if viewed in the light most favorable to it, is sufficient to at least raise the inference that Syroco, now Moulds, disposed of paint droppings, paint filters, and paint thinner at the landfill. Unfortunately, neither party puts forward much in the way of admissible evidence to establish that these items did or did not contain hazardous waste found at the landfill.

The State fails to put forward in any clear fashion exactly what hazardous substances were found at the site. Having reviewed all of the documents submitted, the Court finds the following references to hazardous waste at the site. There was vinyl chloride and benzene in the ground water. Consent decree ¶ 5. There was an elevated concentration of iron in the groundwater. Record of Decision, p. iii. It appears that arsenic, barium, iron, manganese, and mercury were found in the groundwater, but only the concentrations of iron and manganese exceeded the standards for groundwater. Record of Decision, p. 4. The arsenic was not attributable to the landfill. *Id.* p. 4.

Neither of the parties put forward any evidence from which the Court can conclude that the hazardous wastes found at the site, namely iron and manganese, were or were not present in the waste paint, paint filters, and paint thinners deposited by Syroco at the site. Moulds puts forward a test report of the various items completed in 1981. Notably, that study did not test for iron or manganese. The test did find that there were elevated levels of hexavalent chromium, but no chromium was found at the site. The State, likewise, offers no evidence from which the Court can find that the waste deposited by

Moulds at the Van Buren landfill contained hazardous material of the type found there.

On such a poor factual record, the Court declines to render summary judgment. The Court is mindful that the State will bear the burden of establishing that the items disposed of were hazardous wastes. It is simply not possible on the submissions of the parties to determine that the paint droppings, filters, or paint thinner contained hazardous wastes found at the site. The Court is mindful of the often difficult scientific evidence that must be presented on such an issue. Consequently, the Court exercises its discretion to deny summary judgment at this time. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 255–56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moulds is free to raise its argument that the State has failed to meet its burden of proof again on a Rule 50 motion at the close of Plaintiff's proof.

### D. State Law Claims

Moulds' last claim is that the state law claims put forward by the State are either pre-empted by CERCLA or the applicable statute of limitations has passed. The State asserts claims in restitution and unjust enrichment (fourth claim), subrogation (fifth claim), implied indemnity (sixth claim), and public nuisance (third claim). The Court will address each of these claims.

The Court starts with the proposition that "CERCLA as a whole does not expressly preempt state law ..." *Bedford Affiliates v. Sills,* 156 F.3d 416, 426 (2d Cir.1998). There are, however, instances where, because of a conflict with the CERCLA scheme, various state law claims are pre-empted. *See id.* This includes claims that would permit a double recovery. *Id.; see also Volunteers of America of Western New York v. Heinrich,* 90 F.Supp.2d 252, 257 (W.D.N.Y.2000).

In order to maintain the state law causes of action, the State must be seeking to recover damages that are not recoverable under CERCLA. *See Volunteers of America of Western New York,* 90 F.Supp.2d at 257. Only one of the State's state law claims meets this test.

The claim for restitution seeks to recover for the environmental studies performed, the current costs of remediating the landsite, and the future monitoring costs. The State has put forward no argument that these are not recoverable under CERCLA, and indeed these costs are the type of response costs CERCLA governs. Additionally, in at least two circumstances, Courts have found that state law restitution and unjust enrichment claims are pre-empted by CERCLA. *See Bedford Affiliates,* 156 F.3d at 426; *Volunteers of America of Western New York,* 90 F.Supp.2d at 257. Consequently, Moulds is granted summary judgment as to this claim.

Likewise, the State's claims for subrogation and indemnity seek to recover the costs of the Town of VanBuren in remediating the landfill. Any money recovered here would either be duplicative of the State's recovery under § 107 or would be a recovery that circumvented the carefully created CERCLA scheme for settlements and recoveries. The Town, as a potentially responsible party, cannot recover more from Moulds than Mould's share of damages. To allow the State to bring actions under both § 107 of CERCLA and common law claims on behalf of the Town could result in a double recovery against Moulds. The SAC will govern the apportionment of the cost of remediation between the Town and the State, but cannot be used to allow the State to recover its costs twice. Consequently, Moulds is granted summary judgment on these claims as well.

Moulds makes two arguments with regard to the State's public nuisance

claim. The first is that it is pre-empted because it seeks solely to recover for damages that are recoverable under CERCLA. The second is that it is barred by the statute of limitations. In the claim for public nuisance, the State seeks to recover for "the creation of the public nuisance described herein, and for all costs of the State to abate such public nuisance." Compl. ¶ 34. Although the State has not put forward any costs of abating the public nuisance that would be inconsistent with CERCLA, the Court can fathom that such costs exist. Consequently, the Court would reserve judgment to allow the State to supply documentation of such costs. However, because the Court finds that the statute of limitations has expired, that course of action is unnecessary.

The State relies on *State of New York v. General Electric Company*, Index No. 6637–99 (S.C. Albany Co. April 26, 2000), for the proposition that its action for public nuisance is timely. In that case, the Court found that the State was attempting to preserve a public right and that property rights were not at issue. *Id.* at 3. Consequently, the Court applied a statute of limitations that accrued daily.

In the present matter, the State argues that it is again seeking to preserve a public right, and that property rights are not at issue. In contrast, Moulds argues that the State is not seeking to preserve a right, but to recover damages for harm to the property. This Court agrees with Mould's position.

In the General Electric case, the State was seeking an order forcing General Electric to dredge the canal. The issue was not the damage done to the property or water, but rather the necessity of providing an avenue of transportation to facilitate commerce. No similar issue is present here. In the present matter, the State is seeking to force Moulds to pay for damages caused to the land and groundwater by the dumping of hazardous wastes. Consequently, the three year statute of limitations found in CPLR 214–c applies to bar the nuisance action for damages. *See Jensen v. General Electric Co.*, 82 N.Y.2d 77, 89, 603 N.Y.S.2d 420, 623 N.E.2d 547 (1993); *Town of New Windsor*, 919 F.Supp. at 674. The Court notes that no such bar would apply to a claim for injunctive relief. Thus, to the extent the State seeks some form of injunctive relief, that claim may go forward.

### III. Conclusion

Based on the foregoing discussion, Defendant's motion for summary judgment as to the CERCLA § 107 claims is DENIED, as to the state law claims of restitution, indemnity, and subrogation is GRANTED, as to the state law claim of nuisance is GRANTED for a damages claim and DENIED for any injunctive relief claim with leave to renew in pre-trial submissions. **IT IS SO ORDERED.**