State of NEW YORK, Plaintiff,

v.

HICKEY'S CARTING, INC., Dennis C. Hickey, Maria Hickey, Entenmann's, Inc., Estee Lauder, Inc., Whitman Packaging Corp., Muller Martini Corp., Detail Carting Co., Inc., Defendants.

Hickey's Carting, Inc., Dennis C. Hickey, and Maria Hickey, Third–Party Plaintiffs,

v.

Town of Islip and the Islip Resource Recovery Agency, Entenmann's, Inc., Estee Lauder, Inc., Whitman Packaging Corp., Muller Martini Corp., and National Service Industries, Inc., Third–Party Defendants.

No. 01–CV–3136(SLT)(WDW).

United States District Court, E.D. New York.

March 30, 2005.

---

Pedro Medina, Asst. Attorney General, New York, NY, for Plaintiff.

Lilia Factor, Law Offices of Frederick Eisenbud, Commack, NY, for Hickey Defendants.

Maureen Crough, Sidley Austin Brown & Wood, LLP, New York, NY, for Defendant Whitman Packaging Corp./Estee Lauder.

Debra A. Clifford & Edward F. McTiernan, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., Newark, NJ, for Defendant Entenmann's Inc.

Michael Walter Peters, LeBoeuf Lamb Greene & Macrae, Albany, NY, for Defendant Muller Martini Corp.

Theodore W. Firetog, Law Offices of Theodore W. Firetog, Farmingdale, NY, for Defendant Detail Carting Corp.

Jay Safar, Sinnreich, Safar & Kosakoff, LLP, Central Islip, NY, for Third–Party Defendants Town of Islip/Islip Resource Recovery Agency.

Beverlee E. Silva, King & Spaulding, Atlanta, GA, for Third–Party Defendant National Service Industries.

## MEMORANDUM AND ORDER

TOWNES, District Judge.

Defendants move to dismiss Plaintiff State of New York's common law claims as preempted by CERCLA and both its federal and state claims as time-barred. Upon consideration of the written submissions of each party and oral argument on November 12, 2004, and for the reasons set forth below, the Defendants' motion is DENIED.

*BACKGROUND*

The State of New York ("Plaintiff" or the "State") brings this action pursuant to

Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), and the state common law theories of unjust enrichment/restitution, subrogation, and implied indemnity, for the recovery of costs stemming from the alleged dumping of hazardous waste at the Town of Islip landfill on Blydenburgh Road in Islip, Suffolk County, New York ("Landfill"). Plaintiff alleges that industrial and municipal wastes were disposed of at the Landfill from approximately 1927 to 1990. Plaintiff is seeking recovery of the costs it has incurred in responding to and abating the release and threatened release of these allegedly hazardous substances from Hickey's Carting, Inc., Dennis C. Hickey, Maria Hickey, Entenmann's, Inc, Estee Lauder, Inc., Whitman Packaging Corp., Muller Martini Corp., and Detail Carting Co. (collectively "Defendants") as well as a declaratory judgment that the Defendants are strictly, jointly, and severally liable to the State for all future costs it may incur in the cleanup.

Defendants bring this motion to dismiss on the grounds that Plaintiff's common law claims for restitution, subrogation, and implied indemnity are preempted by its claim under section 107 of CERCLA. Defendants further move to dismiss Plaintiff's claims in their entirety as barred under the applicable statutes of limitation.

*DISCUSSION*

I. The Standard for a Motion to Dismiss under Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of the complaint where the plaintiff has failed to state a claim upon which relief can be granted. When evaluating a Rule 12(b)(6) motion, the court must ascertain, after presuming all factual allegations in the pleading to be true and viewing them in the light most favorable to the plaintiff, whether or not the plaintiff has stated any valid ground for relief. *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir.1993). The court may grant a Rule 12(b)(6) motion only where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

II. Preemption of State Common Law Claims

A. General Standard for Preemption of State Law

Congressional intent determines whether a federal statute preempts state law. *See Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137–38, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280–81, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). In determining whether it is Congress' intent to preempt state law in a given arena, a court may look to the language and structure of the federal statute, as well as its purpose. *Ingersoll–Rand Co.*, 498 U.S. at 138, 111 S.Ct. 478. Federal law may supersede state law in one of three ways: (1) by express preemption, where Congress declares its intention to preclude state regulation in a given area; (2) by implied preemption, where the federal scheme is so comprehensive as to raise a reasonable inference that Congress intended to occupy the whole field of regulation, and (3) by conflict preemption, where it is impossible to comply with both federal and state law or where application of state law impedes the objectives of Congress. *California Fed. Sav. & Loan Ass'n*, 479 U.S. at 280–81, 107 S.Ct. 683.

B. The *Bedford* Decision

The Second Circuit's position on the issue of CERCLA preemption of state com-

mon law claims was set forth in *Bedford Affiliates v. Sills*, 156 F.3d 416 (2d Cir. 1998). In *Bedford*, the plaintiff was a property owner who sought recovery for cleanup costs and/or contribution from defendants lessee and sublessee under sections 107 and 113 of CERCLA, as well as restitution and indemnification under the state common law. Prior to addressing the preemption issue, the Court held that Bedford could not proceed under section 107 because it qualified as a potentially responsible person under CERCLA, thus limiting its remedies under the Act to a section 113 action for contribution. *Id.* at 423–25.

In addressing whether section 113 preempted Bedford's state common law claims, the Court held that "CERCLA as a whole does not expressly preempt state law, but simply prohibits states from recovering compensation for the same removal costs or damages or claims under both CERCLA and state or other federal laws." *Id.* at 426 (internal quotation marks omitted). The Court also held that the state claims were not barred under a theory of implied preemption, as "it was not part of the legislative purpose that CERCLA be a comprehensive regulatory scheme occupying the entire field of hazardous wastes." *Id.*

However, the Court determined that there was an actual conflict between the common law restitution and indemnification claims at issue and the statutory settlement scheme enacted as part of section 113. *Id.* at 427. Under section 113(f), potentially responsible parties ("PRPs") who settle are granted protection from contribution actions being asserted against them under the Act but retain the right to bring contribution actions against other non-settling parties. *Id.* The *Bedford* court held that "instituting common law restitution and indemnification actions in

state court would bypass this carefully crafted settlement system," thereby impeding the objectives of Congress. *Id.* The Court concluded that "CERCLA preempts the state law remedies of restitution and indemnification." *Id.*

C. *Bedford's* Application to Cost Recovery Actions Under Section 107

Plaintiff submits that *Bedford* does not apply to the Section 107 claim at issue in this case because the Second Circuit's holding was premised on the need to safeguard section 113's statutory scheme for encouraging settlement among private responsible parties, a concern that is not present when addressing a governmental cost recovery action under section 107. Plaintiff further argues that the settlement provisions of section 113 were what triggered the actual conflict giving rise to preemption in *Bedford*, without which there is no justification for barring the state claims.

Defendants counter that there is no basis for carving out what they view as a "novel new exception to the preemptive effect of CERCLA" by limiting *Bedford* to section 113 claims. Defendants argue that the Second Circuit characterized the conflict between CERCLA and state common law claims in terms broad enough to encompass preemption by either a section 113 or a section 107 claim.

Despite the apparent broadness of *Bedford's* holding that "CERCLA preempts the state law remedies of restitution and indemnification," at least one court has held that the Second Circuit meant for its ruling to preempt only common law actions for contribution. *See Pfohl Brothers Landfill Site Steering Comm. v. Allied Waste Sys.*, 255 F.Supp.2d 134, 152–53 (W.D.N.Y.2003) ("The context [in which] the court's discussion occurs ... establishes that CERCLA's contribution provi-

sion preempts a cause of action under New York common law for contribution, rather than for restitution."). In light of the fact that Bedford originally brought a claim under section 107 as well as section 113, it seems likely that the Court used the general phrase "restitution and indemnity" throughout the opinion to refer to the panoply of common law claims brought as counterparts to the two CERCLA claims, as opposed to indicating that CERCLA's contribution provisions could more widely preempt state law claims.

Moreover, Plaintiff presents a persuasive argument that the actual conflict which supported the finding of preemption in *Bedford* is not present in the instant case. What concerned the Second Circuit in *Bedford* was the possibility that potentially responsible parties would choose not to settle their claims with the government out of fear that other defendants could thwart section 113's contribution protection by bringing identical contribution claims under the state common law.[1] It is difficult to see how such a scenario would play out in the context of a cost recovery action by the State under section 107, where there can be no similar fear that, once the government has reached a settlement with a potentially responsible party, it will then turn around and bring common law claims against the exact same party, as such settlements are intended to resolve a potentially responsible party's liability to the government and generally contain releases and covenants not to sue for costs arising out of the same hazardous waste cleanup. 42 U.S.C. §§ 9613(f)(2), 9622.

With one exception, all of the cases cited by Defendants in support of their argument that *Bedford* preempts the state

common law claims in this case involve section 113 claims, either alone or in conjunction with the section 107 claims, making it difficult to determine whether such courts considered that section 107 claims could merit a different preemption analysis. *See Goldman, Sachs & Co. v. Esso Virgin Is., Inc. (In re Duplan Corp.)*, 212 F.3d 144, 150 n. 7 (2d Cir.2000); *Volunteers of Am. of Western New York v. Heinrich*, 90 F.Supp.2d 252 (W.D.N.Y.2000); *In re Reading Corp.*, 115 F.3d 1111 (3d Cir. 1997). Indeed, the only court within this circuit to apply *Bedford* to preempt state common law claims in a case where the only CERCLA claim at issue was a cost recovery action under section 107 has since reversed course to find that there is no conflict preemption in such circumstances. In *New York v. Moulds*, 196 F.Supp.2d 210, 219 (N.D.N.Y.2002), the court found that the State's common law claims for subrogation and indemnity for the costs of remediating the landfill were preempted by its section 107 claim because "[a]ny money recovered ... would either be duplicative of the State's recovery under § 107 or would be a recovery that circumvented the carefully created CERCLA scheme for settlements and recoveries." However, in *New York v. ELG Northeast Alloys Corporation*, 2003 U.S. Dist. LEXIS 16053 (N.D.N.Y. Aug. 18, 2003), Judge McAvoy retreated from his decision in *Moulds*. The *ELG* decision is itself a summary opinion denying the parties' motions for summary judgment, but it states that the ruling is based on "reasons stated on the record on August 11, 2003," at the oral argument on the motion. (*Id.* at *1.) The transcript of this oral argument contains the following discussion:

---

1. Interestingly, the very conflict that supported the holding in *Bedford* did not apply to the facts of that case, in which a potentially responsible party that had partially settled with the government sued non-settling co-defendants for recovery—a scenario that would never trigger section 113's contribution protection.

[T]he Court now finds persuasive the state's reasoning that the holding in Bedford Affiliates does not apply to CERCLA section 107 actions, but only to contribution actions under section 113. The inconsistencies between CERCLA and the common law that the Second Circuit found significant in Bedford Affiliates simply are not present in the instant section 107 action.

(Tr. at 7, 19–25.) The precedential weight of these unpublished remarks is limited, but *ELG* certainly calls into question the continued validity of the holding in *Moulds,* which Defendants concede is factually analogous to the case at hand.

At least one court has declined to apply *Bedford* beyond the context of a non-settling defendant suing a settling party for common law contribution—even in actions involving section 113. In *Durham Manufacturing Company v. Merriam Manufacturing Company*, the court, despite mischaracterizing the facts of *Bedford* as involving a non-settling PRP suing settling PRPs for contribution, correctly distilled the following principles from the Second Circuit decision: "[T]o allow a state-law claim for restitution against defendants, who had already settled the claims against them with the government, would bypass the carefully crafted settlement system of CERCLA, thus creating an actual conflict between CERCLA and state common-law causes of action." 128 F.Supp.2d 97, 103 (D.Conn.2001) (quoting *Bedford,* 156 F.3d at 427) (internal quotation marks omitted). The court held that the conflict present in *Bedford* is not implicated where a non-settling defendant sues other non-settling defendants. *Id.* at 103. Thus, the court ruled that plaintiff's state law contribution claims were not preempted. *Id.*

█ In the absence of any true danger that allowing the State to bring its common law claims for indemnity and restitution alongside its CERCLA cost recovery action will undermine the settlement incentives set forth in section 113, *Bedford's* holding does not apply to preempt Plaintiff's common law claims on the basis of conflict preemption principles.

D. Preemption Based on the Danger of Double Recovery

Defendants further argue that Plaintiff's common law claims are preempted because they seek recovery of the same costs as the CERCLA claims, in violation of *Bedford's* holding that CERCLA "prohibits states from recovering compensation for the same removal costs or damages or claims under both CERCLA and state or other federal laws." *Bedford,* 156 F.3d at 426. The allegations of the complaint do indicate that the State is seeking the same types of response costs under its federal and state law claims. However, Defendants' argument takes the cited portion of *Bedford* out of context. In the referenced discussion, the Second Circuit clarified that CERCLA does not expressly preempt state law, but simply prohibits double recovery of response costs, as stated in section 114(b) of CERCLA to the following effect:

Any person who receives compensation for removal costs or damages or claims pursuant to this Act shall be precluded from recovering compensation for the same removal costs or damages or claims pursuant to any other State or Federal law. Any person who receives compensation for removal costs or damages or claims pursuant to any other Federal or State law shall be precluded from receiving compensation for the same removal costs or damages or claims as provided in this Act.

42 U.S.C. § 9614(b). Plaintiff concedes that it cannot recover twice for the same

costs, but insists that there is no assurance that double recovery will result if the claims proceed concurrently, as the state and federal claims have different elements. Plaintiff argues that its CERCLA claim might fail in whole or in part if it cannot show that the costs it expended were consistent with the National Contingency Plan ("NCP")[2] or if the federal claim is barred by the statute of limitations, in which case it should be permitted to recover for those costs under the state remedies. Whether this rationale raises a separate conflict with CERCLA's goals is discussed in the next section, but Plaintiff persuasively argues that it would be premature to say at this juncture that the state law claims conflict with section 114(b) when there has been, as of yet, no recovery to be duplicated and there remains the potential that Plaintiff may not be able to recover all of its costs from each cause of action.

This conclusion is supported by the decision in *Solvent Chemical Company v. E.I. Dupont De Nemours & Company*, 242 F.Supp.2d 196 (W.D.N.Y.2002). In *Solvent*, the court held that the import of *Bedford* and its surrounding case law is that a plaintiff may not recover twice, under separate causes of action, for the same injury. *Id.* at 211. The court therefore declined to dismiss the common law claims at the pleading stage based on plaintiffs' representations that they might recover costs under the common law that would not be available under CERCLA, such as costs not consistent with the NCP, thereby avoiding the impermissible double recovery. *Id.* The court noted that the defendants could reassert the motion at a later point in the proceedings (*Id.*), when more information about what could be recovered under each claim would be available.

Similarly, in the remarks forming the basis for the *ELG* decision discussed above, Judge McAvoy followed his conclusion that *Bedford* did not apply to preempt restitution and indemnification claims in the context of section 107 claims with the following caveat: "Obviously, the state will not be permitted to recover twice, but there is no reason it should not be permitted to recover for costs not covered by CERCLA under these common law causes of action." (Tr. at 8, 1–3.) This stands in contrast, once again, to his previous holding in *Moulds*, where the court found that the State's claims for restitution, subrogation, and indemnity were preempted due to the potential for double recovery, as the costs sought under the common law claims were "the type of response costs CERCLA governs." *Moulds*, 196 F.Supp.2d at 219. However, the case for preemption based the likelihood of double recovery was stronger in *Moulds*, as that case was at the summary judgment stage, as opposed to the pleading stage, and the State had yet to put forth any argument or evidence that the costs sought under the common law claims could not be recovered under CERCLA. Here, in contrast, the State has put forth at least two reasons, CERCLA's NCP requirement and statute of limitations, why it may not be able to recover all of its claims under CERCLA. *See also Truck Components, Inc. v. K–H Corp.*, 1995 WL 692541, *11, 1995 U.S. Dist. LEXIS 17444, at *33 (N.D.Ill. Nov. 22, 1995) (preserving state law restitution claim on motion to dismiss despite indications that the relief sought was essentially the same as on the CERCLA claim, as "plaintiffs remain free to plead alternative theories so long as they are otherwise available under the law").

**2.** The National Contingency Plan, 42 U.S.C. § 9605, is a "body of procedural and substantive guidelines which governs CERCLA clean-up actions." *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1533 n. 4 (10th Cir.1992).

In the event that the State succeeds in recovering all of its response costs under CERCLA, it will receive only nominal recovery from the state law remedies. *See Bedford Affiliates v. Manheimer,* 1997 U.S. Dist LEXIS 23903, at *52 (E.D.N.Y. Aug. 6, 1997) (holding at trial that, despite plaintiff's valid claims for restitution and indemnification, its recovery on the claims was "little more than academic ... [a]s a practical reality, the damages to which Bedford is entitled are governed by CERCLA and are not increased by additional causes of action, alternative or creative theories of liability").[3]

Thus, it is premature at this stage to conclude that the potential for Plaintiff's double recovery warrants dismissal of its common law claims.

### E. Conflict Raised by Allowing Recovery Under Common Law When Efforts to Recover Under CERCLA Have Failed

Defendants argue that Plaintiff's state claims should be preempted even if they would not result in double recovery because allowing the State to recover under the common law if it should fail to meet CERCLA's statute of limitations and NCP requirements undermines and conflicts with CERCLA's purposes. The applicable case law does not support the finding of such a conflict.

#### 1. National Contingency Plan

Section 107(a)(4) provides that a potentially responsible person will be liable under the Act for "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4). CERCLA's legislative history says little about this provision, except that the plan is intended as "guidance—the best thinking at the time of publication—but not as a rigid rule or set of procedures" to restrict the Federal government from "accomplishing the basic purposes of the act." 126 Cong. Rec. 33,833 (1980) (Statement of Sen. Jennings Randolph).

There are two ways in which an actual conflict could arise between CERCLA's requirement that the costs sought to be recovered by the State not be "inconsistent with" the NCP and the state common law. First, if it is impossible to comply with both laws. Clearly, the laws are not mutually exclusive, and the State could meet the requirements for both. Thus, an actual conflict can only arise if the state law obstructs the goals and purposes of Congress in including the NCP requirement in the federal law. In *Solvent,* 242 F.Supp.2d at 211, the court did not note the existence of any conflict in allowing the State to recover under common law should it fail to recover under CERCLA due to an inability to meet its NCP consistency requirement. Further, it appears that the effect of finding such a conflict would be to preempt all state common law causes of action in the face of a concurrent CERCLA claim, as the common law remedies will never include a requirement that the costs sought were incurred consistent with the NCP. This would be akin to field preemption by CERCLA of state common law claims, which is inconsistent with CERCLA's savings clauses[4] as well as the Sec-

---

3. This is the precursor case to the Second Circuit decision in *Bedford v. Sills,* 156 F.3d 416. While the Second Circuit went further to find that the plaintiff's common law claims were preempted due to an actual conflict with the settlement provisions of section 113, there is no indication that the Court disagreed with the analysis of the district court in the absence of such a conflict.

4. CERCLA contains multiple savings clauses indicating that state law claims are generally

ond Circuit's holding in *Bedford*, which specifically stated that Congress did not intend to occupy the field of hazardous waste disposal. *See Bedford*, 156 F.3d at 426.

Despite this, some courts in other circuits have noted a conflict between state law and CERCLA on this point. In *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610 (7th Cir.1998), the Court of Appeals reversed the district court's decision to allow plaintiff to recover costs under a state contribution statute that it could not recover under CERCLA for failure to comport with the NCP. The court reasoned that the "purpose of CERCLA's savings clause is to preserve to victims of toxic wastes the other remedies they may have under federal or state law" and that plaintiff, who was jointly responsible for the pollution, was not a victim who could invoke such protections. *Id.* at 617–18. The court went on to hold that:

> CERLCA limits the right of contribution by the requirement in section 107(a)(4)(B) of consistency with the national contingency plan. When the requirement is flouted, contribution is denied; that is the sanction for the violation. [Plaintiff's] invocation of Illinois' contribution statute is an attempt to nullify the sanction that Congress imposed for the kind of CERCLA violation that [Plaintiff] committed.

*Id.* at 618. Finally, the court held that CERCLA's savings provisions could not be used to justify plaintiff's recovery under state law because "CERCLA's savings clause must not be used to gut provisions of CERCLA." *Id.*

The Tenth Circuit has also indicated a leaning towards preemption on this point, noting, in dicta, that "it would be incongruous for federal law to bar private recovery unless there has been substantial compliance with the NCP, but then permit recovery under a contribution theory through mere compliance with less demanding state regulations." *County Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1517 n. 13 (10th Cir.1991).

Despite the strong wording of these holdings, both appear to stem from the same sort of concern as that voiced by the Second Circuit in *Bedford*: that a responsible party will use the common law to outmaneuver the federal scheme set in place by Congress. There can be no such concern here, as it is the government, not a private responsible party, who is seeking to recover the full extent of its response costs under the various remedies open to it. One of CERCLA's overriding goals is to hold polluters responsible for their actions by forcing them to clean up hazardous waste sites and to reimburse the government for such cleanup when it has been done for them. *See United States v. Witco Corp.*, 865 F.Supp. 245, 247 (E.D.Pa.1994) ("Because it is a remedial statute, CERCLA must be construed liberally to effectuate its two primary goals ... enabling the EPA to respond efficiently and promptly to toxic spills, and ... holding parties responsible for releases liable for the costs of the cleanup. In that way, Congress envisioned the EPA's costs would be recouped,

---

preserved, even when brought in conjunction with CERCLA claims. For instance, section 114(a) states that "[n]othing in this Act shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State." 42 U.S.C. § 9614(a). Similarly, section

302(d) states that "[n]othing in this Act shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants." 42 U.S.C. § 9652(d).

the Superfund preserved, and the taxpayers not required to shoulder the financial burden of nationwide cleanup."); *Columbia River Serv. Corp. v. Gilman,* 751 F.Supp. 1448, 1452–53 (W.D.Wash.1990) (quoting Senator Mitchell as stating that "the guiding principle of those who wrote [the Act] was that those found responsible for harm caused by chemical contamination should pay for the costs of that harm"). Thus, the statute should be construed in a way that requires defendants to repay those who clean up their hazardous waste, which in this case tips the balance towards finding that there is no actual conflict between the state common law and CERCLA's NCP requirements. Therefore, the common law claims are not be preempted on this basis.

### 2. Statute of Limitations

Section 113(g) of CERCLA specifies that cost recovery actions under section 107 must be brought within three years of the completion of the removal action or, for a remedial action, within six years of the initiation of physical on-site construction. 42 U.S.C. § 9613(g). As discussed in the next section, the statute of limitations for the State's indemnification and restitution claims is six years from the date on which the party seeking reimbursement suffered the loss or expended the funds. Both parties indicate that it is more likely that the State's CERCLA claims are time-barred than it is that the statute of limitations has run on the State's common law claims. In determining whether the two different statutes of limitations present an actual conflict requiring preemption, it is again clear that the laws are not mutually exclusive, as the State could have brought its claims within the time period allotted by both statutes of limitation. Thus, the issue is whether it obstructs the goals of Congress and the purposes of CERCLA to allow the State to bring common law claims when it would be time-barred from bringing a CERCLA claim for the same response costs.

CERCLA's statutory language, legislative history, and interpreting case law all indicate that Congress did not intend for CERCLA to preempt state common law statutes of limitation in cases like these. As an initial matter, CERCLA itself addresses state statutes of limitations for hazardous substances cases. Section 9658 provides the following "exception to state statutes":

> In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant ... if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

42 U.S.C. § 9658. The existence of this provision indicates that Congress considered potential conflicts raised by varying state statutes of limitation and determined that this one particular case warranted preemption. It also demonstrates that Congress' concern was that recovery would be barred under restrictive state statutes of limitation, not that it would be allowed where it was forbidden under federal law. This analysis is supported by the legislative history on the topic, which notes that "restrictive state statutes of limitations that effectively preclude any plaintiff injured by exposure to hazardous wastes from bringing suit" constitutes "the best argument in favor of creating a Federal cause of action." 126 Cong. Rec. 24,-

342 (1980) (Statement of Sen. Albert Gore Jr.). Senator Gore further noted that without a federal cause of action preempting such statutes of limitation, personal injury plaintiffs suing in federal court would still be stuck with the state statutes of limitation under the *Erie* doctrine. *Id.* at 24,343.

The case law addressing the interaction between CERCLA and state statutes of limitation bears out the implication that the state claims are only preempted where there is a sharp conflict between the state and federal law and application of the state limitations period would result in a denial of recovery under CERCLA. Though there is a division in authority, some courts have held that CERCLA preempts state statutes of repose limiting the period of time in which a corporation can be sued, as such statutes serve to insulate corporate defendants from liability under CERCLA. *See New York v. Panex Indus.*, 1996 WL 378172, *5, 1996 U.S. Dist. LEXIS 9418, at *16–20 (W.D.N.Y. June 24, 1996); *Idylwoods Assoc. v. Mader Capital, Inc.*, 956 F.Supp. 421, 426 (W.D.N.Y.1997). However, the court in *Panex* found that there was no basis to extend its preemption holding to the State's claims for common law negligence and restitution. *Panex*, 1996 WL 378172, *5, 1996 U.S. Dist. LEXIS, at *18. Similarly, courts have held that CERCLA preempts state non-claim statutes with restrictive limitations periods that serve to bar recovery under CERCLA. *See, e.g., Freudenberg—NOK Gen. P'ship v. Thomopoulos*, 1991 WL 325290, **2–3, 1991 U.S. Dist. LEXIS 19421, at *5–9 (D.N.H. Dec. 9, 1991) (finding an actual conflict between the six-month limitations period in the non-claim statute and

CERCLA's three year limitations period and noting that CERCLA "should not be narrowly interpreted to frustrate the government's ability to respond promptly and effectively, or to limit the liability of those responsible for cleanup costs beyond the limits expressly provided").

Thus, the weight of the authorities indicates that there is no actual conflict between CERCLA's NCP and statute of limitations requirements and the State's common law claims requiring preemption.

As Defendants have failed to demonstrate the existence of any actual conflict between the State's CERCLA and state common law claims, the state claims are preserved.

III. Statute of Limitations

A. CERCLA Claim

Defendants assert that Plaintiff's section 107 claim is time barred. Plaintiff appears to allow for the possibility that its CERCLA claim may be barred by the applicable statute of limitations, as the State uses the potential inability to pursue this claim as an argument against preempting the state common law claims.[5] CERCLA's statute of limitations for cost recovery actions brought pursuant to section 107 is three years from the completion of a removal action or six years from the initiation of physical on-site construction of a remedial action. 42 U.S.C. § 9613(g)(2). Courts generally consider an action to constitute removal where it is a short-term cleanup arrangement in response to an environmental emergency and to constitute remedial action where it involves a longer-term, permanent containment or disposal pro-

**5.** Both parties indicate that the issue of whether Plaintiff's CERCLA claim is time-barred was determined in the related case of *New York v. Nat'l Serv. Indus.*, 134 F.Supp.2d 275 (E.D.N.Y.2001) and its Second Circuit

appeal at 352 F.3d 682 (2d Cir.2003). These opinions deal exclusively with the issue of successor liability and neither discuss nor decide the statute of limitations issue.

gram. *See New York v. Shore Realty Corp.,* 759 F.2d, 1032, 1040 (2d Cir.1985), *Prisco v. New York,* 902 F.Supp. 374, 385 (S.D.N.Y.1995); *City of New York v. Exxon Corp.,* 633 F.Supp. 609, 614 (S.D.N.Y. 1986).

■ The record is inadequate to answer the question of whether the Plaintiff's CERCLA claim is time-barred. The amended complaint states only that a 1987 DEC order prompted the Town to commence investigative, removal, and remedial measures at the Landfill, that the State agreed to reimburse the Town for costs incurred in implementing the remedial program, and that state agencies have incurred other response costs in implementing the remedial program and will continue to incur further costs until the program is complete. The complaint does not specify the time period in which these activities have taken place. Each of the Defendants raise the statute of limitations as an affirmative defense in their answers to the amended complaint. However, the Hickey defendants go further, alleging that remedial activities at the site commenced as early as March of 1991 and that any activities performed prior to May 20, 1992 which constitute on-site physical construction would result in the CERCLA claim being time-barred.

However, as none of the Defendants have presented any evidence beyond the pleadings regarding the dates on which Plaintiff commenced remedial activities at the Landfill and whether such activities constitute the initiation of on-site construction, Defendants' motion is denied at this time with leave to renew the motion at a later stage in the proceedings when there is more information in the record as to the time and manner of the State's response actions.

**B. Common Law Claims**

Defendants also assert that Plaintiff's restitution and indemnification claims are time-barred.[6] Defendants argue that Plaintiff's state law indemnification and restitution claims sound in tort and that the State has recast them in quasi-contractual terms in order to defeat the three-year statute of limitations for tort actions set forth in CPLR 214–c. Plaintiff responds that it has actionable claims for indemnification and restitution and is thus bound only by the six year statute of limitations for such claims.

■ To the extent that Defendants argue that the State has not stated a claim for indemnification and restitution, their argument is unpersuasive. An action for implied indemnity lies where plaintiff and defendants owe a duty to third parties and plaintiff discharges the duty which, as between plaintiff and defendants, should have been discharged by defendants. *McDermott v. New York,* 50 N.Y.2d 211, 216–17, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980); *Germantown Central School Dist. v. Clark,* 294 A.D.2d 93, 99, 743 N.Y.S.2d 599 (N.Y.App.Div.2002); *City of New York v. Lead Indus. Ass'n,* 222 A.D.2d 119, 125, 644 N.Y.S.2d 919 (1st Dept.1996) ("The classic situation giving rise to a claim for indemnity is where one, without fault on its own part, is held liable to a third party by operation of law (frequently statutory) due to the fault of another."). In essence, an implied indemnity action is "based upon the law's notion of what is fair and proper between the parties and its purpose is equitable distribution of the loss." *Lead Industries,* 222 A.D.2d at 128–29, 644 N.Y.S.2d 919. Here, Plaintiff alleges that it had a duty under New York Environmental Conservation Law to reimburse the Town for 75% of its expenditures under the remedial program. Plaintiff also alleg-

---

**6.** Defendants do not appear to argue that the State's equitable subrogation claim is time-

barred or otherwise deficient, except to state that it is derivative of its other claims.

es that the Defendants, if they are found to be responsible for the hazardous waste contamination at the Landfill, have a duty to reimburse the Town for the funds it expended to clean up the Landfill, to which the State now holds an implied indemnity right. This is sufficient to maintain the cause of action. *State v. Stewart's Ice Cream Co.*, 64 N.Y.2d 83, 484 N.Y.S.2d 810, 473 N.E.2d 1184 (1984) (holding that the State could bring an action for common law indemnity to recover funds that it had expended for the cleanup and removal of discharged petroleum from any party who caused the discharge); *Nat'l R.R. Passenger Corp. v. New York City Housing Auth.*, 819 F.Supp. 1271, 1279–80 (S.D.N.Y.1993).

■ In order to maintain a cause of action for common law restitution, a plaintiff must allege that it performed the defendants' duty by supplying things or services that "were immediately necessary to satisfy the requirements of public decency, health, or safety." *Lead Industries*, 222 A.D.2d at 125, 644 N.Y.S.2d 919. The State alleges that Defendants had an obligation to abate and completely remediate the Landfill's contamination with hazardous substances and to prevent and remediate the release of those toxic substances into the environment. The State also alleges that its actions and the actions of the Town to perform these remedial activities were necessary to protect the safety of the public and the environment of the State. Taking the allegations in the complaint as true, as is required on a motion to dismiss, Plaintiff has stated a claim for restitution. *See Nat'l R.R. Passenger Corp.*, 819 F.Supp. at 1280.

■ The applicable state statute of limitations for indemnity and restitution actions arising out of claims for unjust enrichment is six years. CPLR 213(1)-(2); *Stewart's Ice Cream*, 64 N.Y.2d at 86, 484 N.Y.S.2d 810, 473 N.E.2d 1184; *Lead In-*dustries, 222 A.D.2d at 129, 644 N.Y.S.2d 919; *Congregation Yetev Lev D'Satmar v. 26 Adar NB Corp.*, 192 A.D.2d 501, 503, 596 N.Y.S.2d 435 (N.Y.App.Div.1993). The statute of limitations begins to run when the plaintiff suffers the loss giving rise to the action for indemnity (*Stewart's Ice Cream*, 64 N.Y.2d at 88–89, 484 N.Y.S.2d 810, 473 N.E.2d 1184; *McDermott*, 50 N.Y.2d at 219, 428 N.Y.S.2d 643, 406 N.E.2d 460) or, in the case of an action for restitution, upon the occurrence of the wrongful act giving rise to the duty to repay. *See Congregation Yetev Lev D'Satmar*, 192 A.D.2d at 503, 596 N.Y.S.2d 435. In both cases, the triggering act would be the State's expenditure of funds in connection with the remedial program. *See New York v. Ackley*, 289 A.D.2d 812, 813, 734 N.Y.S.2d 722 (3rd Dept.2001) (holding that an action for indemnity "shall be deemed to commence . . . from the time that a payment was made from the Fund for cleanup and removal costs"). However, as with the CERCLA claim, there is no information in the record to indicate when this expenditure of funds took place. Plaintiff merely states in its brief that the claims are timely, but Defendants have not met their burden of showing that they are not. Thus, Defendants motion is denied at this time on this claim as well.

*CONCLUSION*

Defendants' motion to dismiss the state common law claims as preempted by CERCLA is denied. In addition, Defendants' motion to dismiss all claims as time-barred is denied at this time due to the lack of information in the record which would permit the statute of limitations issue to be decided at this juncture.

**SO ORDERED.**